IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | |
|---|---|
| PHILLIP RAMSEY, | CASE NO. 1:16-cv-1059 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| RECEIVABLES PERFORMANCE MANAGEMENT, LLC, | **WITH JURY DEMAND** |
| Defendant. | |

Now comes Plaintiff Phillip Ramsey by and through his attorneys for his Complaint against Defendant Receivables Performance Management, LLC and states as follows:

**I.      INTRODUCTION AND PARTIES**

1. Plaintiff Phillip Ramsey ("Plaintiff") is an Ohio resident who resides at 7919 Colette Lane, Cincinnati, Ohio 45224. Plaintiff is a "consumer" as that term is defined by Ohio Revised Code § 1345.01(D). Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

2. Defendant Receivables Performance Management, LLC ("RPM") is a Washington limited liability company with its principle place of business located at 20816 44th Ave. W., Lynnwood, Washington 98036. RPM is registered to do business in Ohio and

1

regularly conducts business in Hamilton, County, Ohio. RPM is and at all relevant times was: (i) a "debt collector" as that term is defined by 15 U.S.C. §1692a(6), (ii) a "person" as that term is defined by 47 U.S.C. § 153(39), and (iii) a "supplier" as that term is defined by Ohio Revised Code § 1345.01(C).

3. Plaintiff seeks to recover his damages (actual, statutory, treble, and punitive), and attorney's fees and costs associated with this action based on violations of the the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. and the Ohio Consumer Sales Practices Act ("CPA"), Ohio Revised Code § 1345 et seq. that occurred during the course of RPM's debt collection efforts against Plaintiff.

4. As detailed throughout this Complaint, RPM (among other things) willfully violated the TCPA by calling Plaintiff on his cellular telephones using an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without Plaintiff's "prior express consent" as required under the TCPA. As a result of RPM's knowing and/or willful violations of the TCPA, Plaintiff is entitled up to $1,500.00 for each and every call made by RPM that violated the TCPA.

II.     **VENUE AND JURISDICTION**

5. Venue is appropriate in this District Court under 28 U.S.C. § 1391(b) because (i) a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and (ii) this is the District in which Plaintiff resides.

6. RPM engaged in business in this District and engaged in tortious acts or omissions within this District, and has otherwise made or established contacts within this District sufficient to permit the exercise of personal jurisdiction.

7. Jurisdiction in this case is proper under 47 U.S.C. § 227 and 28 U.S.C. § 1331, which grant the District Court jurisdiction to hear this action without regard to the amount in controversy.

### III.         FACTUAL BACKGROUND

8. Plaintiff was a customer of Windstream Communications ("Windstream"), a provider of telephone, internet, and television services. As part of his bundle package service with Windstream, Plaintiff subscribed to DISH satellite television.

9. During the course of early to the middle of 2014, Plaintiff's father, who suffers from dementia and is currently under Plaintiff's court ordered guardianship, purchased certain on-demand movies on various occasions without Plaintiff's authorization. After receiving invoices from Windstream showing these unauthorized purchases, Plaintiff called Windstream's customer service representatives to dispute the charges and have these unauthorized charges removed from his bill. After several conversations with Windstream representatives, Windstream promised and agreed to remove these unauthorized charges from his Windstream account.

10. Notwithstanding the foregoing promises and agreements, Windstream's own collection department and debt collectors began collection efforts against Plaintiff, which included making repeated automated calls to Plaintiff's cellular telephone and sending him collection letters.

11. On August 22, 2014, Windstream sent a collection letter to Plaintiff stating that the disputed amounts were owed and that Windstream was going to send his account to collections if he did not make payment for the unauthorized charges. Attached as Exhibit A is a true and accurate copy of the August 22, 2014 collection letter from Windstream.

12. In response to these collection activities, Plaintiff had repeated telephone calls with Windstream in which he disputed the debt and instructed Windstream to immediately cease all calls he was receiving.

13. Plaintiff also sent a letter dated November 16, 2014 to Windstream disputing the purported debt and expressly instructing Windstream "and any affiliated collection agencies to cease all communications with me in regards to the Windstream account associated with Phillip Ramsey . . . ." Plaintiff sent the November 16, 2014 letter to Windstream via U.S. Postal Service Priority 2-Day Mail and it was delivered to Windstream on November 19, 2014. Attached as Exhibit B are true and accurate copies of the November 16, 2014 letter and the U.S. Postal Service tracking information for that letter.

14. To the extent Plaintiff ever provided Windstream or any of its debt collectors with any "prior express consent" under the TCPA, based on the express instructions and statements made by Plaintiff during his telephone calls with Windstream and contained in his November 16, 2014 letter, Plaintiff effectively revoked any purported "prior express consent" under the TCPA to receive automated and/or prerecorded message calls made by Windstream and any collection agency to his cellular telephone. Any subsequent automated and/or prerecorded message calls made after November 19, 2014 to his cellular telephone arising out of his relationship with Windstream constitute knowing and willful violations of TCPA.

15. Around this same period, Plaintiff cancelled his service with Windstream as a result of his dissatisfaction with Windstream's customer service. Notwithstanding Windstream's agreement to waive the unauthorized charges and having received his November 16, 2014 letter, Windstream's and its debt collector's efforts continued. For example, attached

4

as Exhibit C is a true and accurate copy of a collection letter from Windstream dated November 24, 2014.

16. The final invoices that Plaintiff received from Windstream show that Windstream agreed to waive the unauthorized charges and Plaintiff owed a balance of $0.00 after he cancelled his service with Windstream. Attached as Exhibit D are true and accurate copies of Windstream's "Final Bill" and "Additional Final Bills" that show credits were applied to Plaintiff's account: $1,174.19 on 9/15/14 and $6.57 on 12/17/14 . The Additional Final Bill dated December 29, 2014 shows that Plaintiff's final balance for his Windstream account is $0.00.

17. Upon information and belief, in or around early 2015, RPM began collection efforts against Plaintiff. These collection efforts included RPM making calls to Plaintiff's cellular telephone (often several times a day) using an automatic telephone dialing system and/or an artificial or prerecorded voice. In addition, RPM sent collection letters to Plaintiff. For example, attached as Exhibit E is a collection letter from RPM dated September 9, 2016.

18. In response to RPM's collection efforts, Plaintiff spoke via telephone with RPM's representatives and expressly instructed RPM to immediately stop its collection calls and activities.

19. Upon information and belief, RPM continued to make an untold number of collection calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or an artificial or prerecorded voice. Upon information and belief, Plaintiff estimates these unauthorized automated collection calls to number in excess of one hundred calls.

20. As outlined in this Complaint, Plaintiff repeatedly instructed Windstream and its debt collector RPM (both in writing and orally) to cease making all collection calls being made to Plaintiff. Upon information and belief, RPM repeatedly violated the TCPA by making collection calls to Plaintiff's cellular telephone using an automatic telephone dialing system and/or an artificial or prerecorded voice without his "prior express consent."

21. Plaintiff seeks to recover actual damages, statutory damages, treble damages, punitive damages, and his attorney's fees and costs associated with this action based on RPM's unlawful conduct.

**FIRST CLAIM FOR RELIEF**
**TELEPHONE CONSUMER PROTECTION ACT**
**(Violation of 47 U.S.C. § 227)**

22. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 21 of this Complaint as if fully set forth herein.

23. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers," defined as equipment which "has the capacity . . . (a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers." 47 U.S.C. § 227(a)(1). Specifically, the plain language of TCPA prohibits the use of automated telephone equipment and/or an artificial or prerecorded voice to call any cellular telephone in the absence of an emergency or the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii).

24. According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the

6

TCPA, such calls are prohibited because, as Congress found, automated and/or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.[1]

25. All telephone contact by RPM to Plaintiff on his cellular telephone forming the basis for this Complaint occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

26. The telephone number that RPM used to contact Plaintiff was assigned to cellular telephone services as defined in 47 U.S.C. § 227(b)(1)(A)(iii).

27. RPM did not make telephone calls to Plaintiff's cellular telephone "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

28. Under the TCPA, automated and/or prerecorded message calls to a cellular telephone number by (or on behalf of) are permitted only if the calls are made with the "prior express consent" of the called party.  Upon information and belief, Plaintiff did not provide "prior express consent" under the TCPA to receive the automated and/or prerecorded message calls made by RPM to his cellular telephone.

29. Upon information and belief, RPM did not obtain the required "prior express consent" under the TCPA to make such automated and/or prerecorded message calls because:

    a. Plaintiff did not provide his cellular telephone number to Windstream as part of a transaction underlying the alleged debt RPM sought to

---

[1] Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003).

collect, but instead his cellular telephone number was obtained by RPM using skip tracing methods and/or other means; or alternatively,

b. Plaintiff expressly revoked (orally and in writing) any purported prior express consent under the TCPA.

30. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on RPM to demonstrate that Plaintiff provided "prior express consent" that is clearly and unmistakably stated to receive such automated and/or prerecorded message calls from RPM.[2]

31. The TCPA prohibits RPM from, among other things, making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a cellular telephone service . . . . " 47 U.S.C. § 227(b)(1)(A)(iii).

32. The TCPA further provides that a party may bring an action to seek injunctive relief, and to recover actual monetary loss or to receive $500 in statutory damages for each violation of the TCPA, whichever is greater. 47 U.S.C. § 227(b)(3). Treble damages are also available to parties for knowing or willful violations. Id.

33. Under information and belief, RPM violated the TCPA by contacting Plaintiff on his cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or by using "an artificial or prerecorded voice" as defined in 47 U.S.C. § 227(b)(1)(A), without his prior express consent within the meaning of the TCPA. In

---

[2] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 F.C.C.R. 559, 565 (Jan. 4, 2008).

8

so doing, RPM has systematically violated the TCPA entitling Plaintiff up to $1,500.00 in statutory damages for each call made by RPM in violation of the TCPA.

34. Upon information and belief, RPM used automated telephone dialing systems as part of their regular debt collection activities, and used such systems when calling Plaintiff's cellular telephone as outlined in this Complaint based on:

  a. The number of phone calls totaling over one hundred that were made in short time period from early 2015 to July 2015. Such a large number of phone calls in a relatively short period of time is evidence of RPM using automated telephone dialing systems;

  b. RPM having continued to make repeated calls in a single day, including calling Plaintiff up to five times in a single day on multiple of occasions is further evidence of RPM using automated telephone dialing systems; and

  c. Attached as Exhibit F is a true and accurate copy of a webpage from RPM's website outlining the predictive systems employed by RPM as part of its collection efforts which is further evidence of RPM using automated telephone dialing systems. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14091-93 (July 3, 2003) (where the FCC defines "automatic telephone dialing system" to include predictive systems).

35. Upon information and belief, RPM repeatedly violated 47 U.S.C. § 227(b)(1)(A)(iii) by making hundreds of collection calls to Plaintiff's cellular telephone using

an automatic telephone dialing system and/or an artificial or prerecorded voice without his prior express consent under the TCPA.

36. As detailed throughout this Complaint, Plaintiff either did not give his prior express consent to RPM or, in the alternative, repeatedly revoked (both in writing and orally) any purported prior consent for RPM to make such collection calls. Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1255 (11th Cir. 2014) (holding that prior consent under 47 U.S.C. § 227(b)(1)(A)(iii) may be revoked orally; noting "that allowing consent to be revoked orally is consistent with the 'government interest articulated in the legislative history of the Act [that] enabl[es] the recipient to contact the caller to stop future calls.'"); In the Matter of Rules and Regulations Implementing the Tel. Consumer Protection 30 FCC Rcd. 7961, 7996 ¶¶47, 64 ("[A] called party may revoke consent at any time and through any reasonable means. A caller may not limit the manner in which revocation may occur. Moreover, we emphasize that regardless of the means by which a caller obtains consent, under longstanding Commission precedent, if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the caller to prove that it obtained the necessary prior express consent. . . . Consumers have a right to revoke consent, using any reasonable method including orally or in writing.").

37. As a direct and proximate result of RPM's refusal to comply with its TCPA obligations, Plaintiff has suffered substantial damages entitling him to an award of actual damages in amounts to be proved at trial or statutory damages of $500 for each violation of the TCPA, whichever is greater.

38. RPM's complete and utter indifference of its obligations under the TCPA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by him are the

result of RPM's willful or knowing violations of the TCPA entitling Plaintiff to treble damages of $1,500 for each and every unlawful call pursuant to 47 U.S.C. § 227(b).  <u>King v. Time Warner Cable, Inc.</u>, No. 1:14-cv-02018, 2015 U.S. Dist. LEXIS 88044 (S.D.N.Y July 7, 2015) (granting plaintiff's motion for summary judgment; awarding plaintiff $229,500 in treble damages under the TCPA based on 153 calls to plaintiff's cellular telephone where Time Warner used an automatic telephone dialing system and/or a prerecorded voice to make the collection calls; finding Time Warner's conduct "particularly egregious" because it continued making the collection calls even after Plaintiff complained about the collection calls in a seven-minute phone conversation with a Time Warner representative).

39. As a direct and proximate result of RPM's conduct, Plaintiff has been damaged in an amount to be determined by the Court.

**SECOND CLAIM FOR RELIEF**
**OHIO CONSUMER SALES PRACTICES ACT**
**(Violation of Ohio Revised Code § 1345.02 and § 1345.03)**

40. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41. "A person retained to collect, or attempt to collect upon claims of debt arising from a consumer transaction" is a "supplier" under the Ohio CPA.  <u>Gatto v. Frank Nero Auto Lease, Inc.</u>, 8th Dist. No. 74894, 1999 Ohio App. LEXIS 1571, at *8.

42. Under Ohio law, violations of the TCPA are also violations of the Ohio CPA.  <u>Charvat v. GVN Michigan, Inc.</u>, 531 F.Supp.2d 922, 927-29 (S.D. Ohio 2008) (finding plaintiff could recover statutory damages under both the TCPA and the Ohio CPA for each unlawful call made to plaintiff).

11

43. The Ohio CPA prohibits debt collectors such as RPM from "commit[ting] unfair or deceptive practice[s]" or "unconscionable act[s] or practice[s] in connection with a consumer transaction." Ohio Rev. Code § 1345.02 and § 1345.03.

44. RPM violated Ohio Revised Code § 1345.02 and § 1345.03 by, among other things, violating the TCPA as outlined throughout this Complaint, which also constitutes unfair or deceptive practice and unconscionable acts or practices in connection with a consumer transaction under Ohio Rev. Code § 1345.02 and § 1345.03.

45. As a direct and proximate result of RPM's violations of the Ohio CPA, Plaintiff suffered damages in an amount to be determined by the Court.

WHEREFORE, Plaintiff asks this Court to enter judgment in his favor as follows:

A. Award Plaintiff actual damages pursuant to 47 U.S.C. § 227 and Ohio Rev. Code Chapter 1345 in in an amount to be determined at trial;

B. Award Plaintiff statutory damages as provided for by 47 U.S.C. § 227(b)(3), and Ohio Rev. Code Chapter 1345;

C. Award Plaintiff treble damages as provided for by 47 U.S.C. § 227(b) and Ohio Rev. Code Chapter 1345;

D. Award Plaintiff punitive damages as provided for by Ohio law;

E. Award Plaintiff his attorneys' fees, costs and expenses as provided for by Ohio Rev. Code § 1345;

F. Issue a permanent injunction prohibiting RPM from placing non-emergency calls to the cellular telephone of Plaintiff using an automatic telephone dialing system and/or pre-recorded or artificial voice as provided for by 47 U.S.C. § 227(b)(3);

G. Award Plaintiff pre-judgment and post-judgment interest; and

H. Award Plaintiff such other and further relief as this Court deems necessary.

Respectfully submitted,

/s/ *Adam V. Sadlowski*
Adam V. Sadlowski, Trial Attorney (0079582)
Cori R. Besse (0081447)
SADLOWSKI & BESSE L.L.C.
11427 Reed Hartman Highway, Suite 217
Blue Ash, Ohio 45241
Tel:  (513) 618-6596
Fax: (513) 618-6442
asadlowski@sb-lawyers.com
cbesse@sb-lawyers.com

Attorneys for Plaintiff Phillip Ramsey

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

/s/ *Adam V. Sadlowski*
Adam V. Sadlowski