IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Phillip Ramsey, | : | Case No. 1:16-cv-1059 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| Receivables Performance Management, | : | Order Denying Defendants' Motions to |
| LLC, *et al*., | : | Dismiss and Granting Plaintiff's Motion |
| | : | for Costs and Attorney's Fees |
| Defendants. | : | |

This matter is before the Court on Defendant Receivables Performance Management, LLC's Motion to Dismiss (Doc. 20), Defendant Howard George's Motion to Dismiss (Doc. 37), and Plaintiff's Motion for Attorney Fees and Costs (Doc. 38). Each motion is opposed. (Doc. 26, 39, 40.) For the reasons that follow, the Motions to Dismiss will be DENIED, and the Motion for Costs and Attorney's Fees will be GRANTED.

I. BACKGROUND

A. Facts[1]

Plaintiff Phillip Ramsey is an Ohio resident who was a customer of Windstream Communications, a provider of telephone, internet, and televisions services, through which he subscribed to DISH satellite television. (Doc. 18 at PageID 129, ¶ 9.) In 2014, Ramsey's father, who suffers from dementia and is under Plaintiff's court-ordered guardianship, purchased on-demand movies without Plaintiff's authorization. (*Id*. at ¶ 10.) Plaintiff disputed the charges for these purchases with Windstream by speaking with customer service representatives on multiple

---

[1] The Court has drawn the background facts from Plaintiff's First Amended Complaint (Doc. 18) unless otherwise indicated.

occasions, the resolution of which was Windstream promising to agree to remove the unauthorized charges from Plaintiff's account. (*Id.*)

In spite of this, Windstream began collection efforts against Plaintiff by making repeated automated calls to his cell phone and sending him collection letters. (*Id.* at PageID 130, ¶ 11.) In response, Plaintiff spoke with Windstream on the telephone to dispute the debt and instructed Windstream to immediately cease all calls. (*Id.* at ¶ 13.) On November 16, 2014, Plaintiff also sent a letter to Windstream formally disputing the debt and instructing Windstream "and any affiliated collection agencies" to cease communications with him regarding his Windstream account. (*Id.* at ¶ 14.) Plaintiff also cancelled his service with Windstream. (*Id.* at PageID 131, ¶ 16.) Yet Windstream's collection efforts continued. (*Id.*) The final invoices Plaintiff received from Windstream after canceling service reflect a $0.00 balance and that Windstream, therefore, agreed to waive the disputed charges. (*Id.*)

In early 2015, Defendant Receivables Performance Management, LLC ("RPM"), a Washington limited liability company, began collection efforts against Plaintiff by making calls to Plaintiff's cell phone using an automatic telephone dialing system and/or an artificial or prerecorded voice. (*Id.* at ¶ 18.) RPM also sent collection letters to Plaintiff. (*Id.* at PageID 131–32, ¶ 18.) In response, Plaintiff spoke via telephone with RPM representatives and instructed RPM to immediately stop its collection calls. (*Id.* at PageID 132, ¶ 19.) RPM continued its collection efforts to the tune of an estimated one hundred calls to Plaintiff's cell phone. (*Id.* at ¶ 20.)

### B. Procedural History

Plaintiff filed suit on November 8, 2016 (Doc. 1), and RPM filed an answer on February 8, 2017 (Doc. 7). The Court issued its Preliminary Pretrial Order on May 30, 2017, and

discovery commenced. (Doc. 13). On June 22, 2017, Plaintiff filed a Motion for Leave to Amend the Complaint to add a named Defendant, Howard George, the founder and CEO of RPM (Doc. 16), which was unopposed by Defendant. (Doc. 17). The Court granted that Motion on July 14, 2017. (July 14, 2017 Docket Entry.)

In his First Amended Complaint, Plaintiff asserts two causes of action against both Defendants: (1) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227; and (2) violation of the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code §§ 1345.02–.03.

On August 11, 2017, RPM filed a Motion to Dismiss.[2] (Doc. 20.) On October 26, 2017, the Court ordered RPM and Plaintiff to file supplemental briefs addressing four questions related to RPM's Motion to Dismiss. (Doc. 30.) Notably, RPM only addressed three of the Court's questions in its Memorandum, failing to address its fourth question altogether.[3] (Doc. 34.) Plaintiff filed its responsive Memorandum on November 16, 2017. (Doc. 36.) The following day, on November 17, 2017, George, represented by the same attorney as RPM, filed a Motion to Dismiss (Doc. 37). Much of the argument presented by George is verbatim what was presented by RPM in its first-filed Motion to Dismiss. On November 20, 2017, Plaintiff filed a Motion for Costs and Attorney's Fees (Doc. 38). All motions are now ripe.

---

[2] At the time of filing, George had not yet been served.

[3] In addition, RPM's response exceeded the Court's page limit as it was single-spaced, which violates Southern District of Ohio Local Rule 5.1(a). The Court also notes that Defendant George's Response in Opposition to Plaintiff's Motion for Costs and Attorney's Fees (Doc. 40) incorrectly uses footnote citations rather than in-text citations as required by Judge Dlott's Standing Order on Civil Procedures Rule I.E.1.d. Defendants are advised that future filings that do not comply with the Southern District of Ohio Local Rules and/or Judge Dlott's Standing Order on Civil Procedures will be stricken from the record.

## II.  LEGAL STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff and accept the factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The Court "need not, however, accept conclusory allegations or conclusions of law dressed up as facts." *Erie Cty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012).

In ruling on a motion to dismiss, the court may consider written instruments that are exhibits to a pleading, as those are considered part of the pleading for all purposes. *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 292 (6th Cir. 2015) (citing Fed. R. Civ. P. 10(c)). A court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*. (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)).

### B. Rule 12(b)(7)

A party may also move to dismiss under Rule 12(b)(7) for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). The Court applies a three-part inquiry to determine whether

a case must be dismissed for failure to join an indispensable party under Rule 19.[4] *Reyna Capital Corp. v. Millennium Leasing and Fin. Servs., Inc.,* 494 F. Supp. 2d 709, 713 (S.D. Ohio 2006) (citing *Glancy v. Taubman Centers*, *Inc*., 373 F.3d 656 (6th Cir. 2004)). First, the Court

---

[4] Rule 19, governing joinder, states:

> **(a) Persons Required to Be Joined if Feasible.**
> **(1)** *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
> **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
> **(2)** *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
> **(3)** *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.
>
> **(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
> **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> **(2)** the extent to which any prejudice could be lessened or avoided by:
> **(A)** protective provisions in the judgment;
> **(B)** shaping the relief; or
> **(C)** other measures;
> **(3)** whether a judgment rendered in the person's absence would be adequate; and
> **(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

must determine whether the person or entity is a necessary party under Rule 19(a). *Id.*; *see Temple v. Synthes Corp.,* 498 U.S. 5, 8 (1990) (establishing that Rule 19(b) inquiry is required only if the party satisfies the threshold requirements of Rule 19(a)). Second, if the person or entity is a necessary party, the Court must determine if joinder of that person or entity will deprive the Court of subject matter jurisdiction. *Id*. Third, if joinder is not feasible because it will eliminate the Court's ability to hear the case, the Court must analyze Rule 19(b) factors to determine whether it should "in equity and good conscience" dismiss the case because the absentee person or entity is indispensable. *Id*.

## III.   MOTIONS TO DISMISS

The Court will first consider the Defendants' Motions to Dismiss the Complaint, and will then consider Plaintiff's Motion for Costs and Attorney's Fees. RPM and George move to dismiss the Complaint on the grounds that Plaintiff engaged in improper claim-splitting and failed to join Windstream, which they deem an indispensable party. In addition to these two arguments, George argues a third ground for dismissal: that Plaintiff failed to state a viable claim against him. The Court will address these arguments in turn, but is not persuaded that either Defendant is entitled to dismissal of the First Amended Complaint.

### A. Claim-Splitting Doctrine is Inapplicable

Both Defendants argue that the Plaintiff engaged in improper claim-splitting by bringing this action on the heels of *Ramsey v. International Computer Systems, Inc. d/b/a First Collection Services*, 16-cv-745-TSB, (the "*First Collection* action"),[5] a previously-filed and now-resolved

---

[5] The Court may take judicial notice of the docket in *First Collection* pursuant to Federal Rule of Evidence 201(b). *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the

6

action which arises from the same nucleus of facts. The *First Collection* action is similar to the underlying case, but it is distinct in that it involves *different* companies' collection efforts against Plaintiff.

In *First Collection*, Plaintiff Phillip Ramsey brought suit against Defendant International Computer Systems, Inc. d/b/a First Collection Services ("First Collection") and Southwest Credit Systems, L.P. ("Southwest") for alleged violations of the Fair Credit Reporting Act by Southwest and violations of the TCPA and Fair Debt Collection Practices Act by both companies. (No. 16-cv-745, Doc. 1.) The *First Collection* case revolves around the collection efforts by Windstream, First Collection, and Southwest related to the debt incurred by Ramsey when he cancelled his Windstream account. (*Id.* at PageID 4–5.) Ramsey alleged that through letter and over the phone, he instructed Windstream and First Collection that Windstream and affiliated collection agencies should cease all communications with him in regard to his Windstream account. (*Id.*) Ramsey cancelled his Windstream service, but Windstream and its debt collectors' efforts continued. (*Id.* at PageID 5–6.) First Collection sent a letter to Ramsey acknowledging receipt of his letter, including correspondence from Windstream showing his debt was written off, but stated that the charge was legitimate and outstanding. (PageID 6.) Southwest also began collection efforts on behalf of Windstream by sending collection letters and contacting Ramsey on his telephone. (*Id.* at PageID 7.) Southwest continued these efforts even after Ramsey sent a letter requesting that the company stop contacting him regarding the debt. (*Id.*) Southwest also

---

motion into one for summary judgment.") (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008)).

7

reported the incorrect status of Plaintiff's Windstream account to major credit bureaus. (*Id*. at PageID 8.) The case is now resolved.[6]

Under the claim-splitting doctrine, a district court may dismiss or stay a later-filed action pursuant to its authority to administer its docket where it (1) involves the same parties or their privies; and (2) arises out of the same transaction or series of transactions as the first suit. *Zephyr Aviation III, L.L.C. v. Keytech Ltd.,* No. 8:07-cv-227-T-27TGW, 2008 WL 759095, *1 n.4 (M.D. Fla. Mar. 20, 2008) (adopting report and recommendation, staying case and denying without prejudice defendants' motion to dismiss) (citing *Curtis v. Citibank, N.A*., 226 F.3d 133, 138 (2nd Cir. 2000)); *Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599 (5th Cir. 1999)). "[T]he 'claim splitting doctrine' applies where a second suit has been filed before the first suit has reached a final judgment." *Id.* at *6 (citing *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp*., 296 F.3d 982 (10th Cir. 2002) (finding the district court erred in dismissing action under claim-splitting doctrine and finding the relevant inquiry to be whether the two suits involved one wrong committed by one defendant and whether the equity of the situation supported dismissal of the second case.). As Plaintiff points out and Defendants ignore, this doctrine is typically applied where the first-filed and second-filed actions may still be consolidated. *See, e.g., Zephyr*, 2008 WL 759095 (first-filed action stayed and still pending at time the Court was faced with a motion to dismiss the second action). The first-filed action is no longer pending. The fact that this action cannot be consolidated with the first-filed action, which

---

[6] A review of the docket reveals that on November 3, 2016, Plaintiff filed a Notice of Acceptance of Defendant Southwest Credit Systems, L.P.'s Rule 68 Offer of Judgment and a Clerk's Judgment was entered the following day against Southwest Credit Systems, L.P. (Case No. 16-cv-745, Docs. 14, 15.) An Amended Complaint was filed against Defendant International Computer Systems, and on March 31, 2017, the Court issued a Conditional Order of Dismissal after being advised that the matter had been settled. (*Id.*, Mar. 31, 2017 Docket Entry.)

8

is no longer pending, is problematic and undermines the goal of judicial efficiency. Furthermore, Defendants did not cite any applicable Sixth Circuit case law applying the doctrine in analogous circumstances as this case.[7] Accordingly, the Court declines to exercise its discretion to apply this doctrine here.

Even if the Court was persuaded that the claim-splitting doctrine should result in dismissal of Plaintiff's claims, which it is not, the elements are not met. The *First Collection* action involved separate and distinct collection efforts by two *different* entities than the Defendants in this case. This action is based on 245 unauthorized telephone calls RPM allegedly made to Plaintiff's cell phone using RPM's telephone dialing system, representatives, employees, processes, and procedures, at dates and times specific to RPM. The calls were made by RPM and do not involve or relate to First Collection or Southwest. There is no evidence that the Defendants in this action are in privity with First Collection or Southwest by virtue of their

---

[7] Rather, "[t]o the extent that there is some need to prevent claim-splitting, that purpose is already served by ordinary principles of *claim preclusion*. Plaintiffs generally must bring all claims arising out of a common set of facts in a single lawsuit, and federal district courts have discretion to enforce that requirement as necessary 'to avoid duplicative litigation.'" *Elgin v. Dep't of Treasury*, 567 U.S. 1, 34 (2012) (emphasis added). Defendants argue that claim-splitting is a type of claim preclusion, and therefore, they are arguing claim preclusion applies. The two doctrines have different elements. For the sake of completeness, the Court also finds that claim preclusion is inappropriate and Defendants have not established that the elements are met. *See Heike v. Central Mich. Univ. Bd. Of Trustees*, 573 F. App'x 476, 480 (6th Cir. 2014) (Claim preclusion applies when: (1) there is a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) there is an identity of claims between the first and second actions.). Though given the opportunity to do so, RPM failed to address whether there has been a final decision on the merits by virtue of the resolution of the *First Collection* action to satisfy the first prong of claim preclusion. As Plaintiff points out, such a decision would require Plaintiff prevailing on its TCPA claims, and there is no evidence of a decision on the merits in the *First Collection* action. The second prong, privity, is also lacking, as discussed *infra*. Finally, the fourth element of claim preclusion is not met, as the *First Collection* action involved separate and distinct collection efforts by *different* entities than RPM and Defendant George.

connection to collecting on the same underlying debt. In any event, whether the entities are in privity would be a fact question that is inappropriate for the Court to weigh in on at this stage.

For these reasons, the Court rejects the argument that the claim-splitting doctrine bars Plaintiff's claims.

### B. Windstream Is Not an Indispensable Party

Defendants argue that this case should be dismissed for failure to join Windstream. The Court disagrees. Under Rule 19(a), a party is required to be joined if the Court cannot accord complete relief among the existing parties, or the party has an interest relating to the subject of the action and is so situated that disposing of the action in the party's absence may impede that party's ability to protect its interest or leave that party subject to a risk of incurring double, multiple, or inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(A)–(B). Only if Windstream is a necessary party, does the Court examine Rule 19(b) as a potential ground for dismissal of the action for failure to join a necessary party. *See Temple,* 498 U.S. at 8.

Windstream is not a necessary party under Rule 19(a). Defendants argue that the claims in this case revolve around Plaintiff's allegations that Plaintiff sent a letter to Windstream disputing his debt and expressly instructing Windstream and any affiliated collection agency to cease communications with him regarding his account. These allegations do not render Windstream a necessary party. Plaintiff does not assert any claims against or seek damages from Windstream based on the automated calls made by RPM. Plaintiff's claims relate to RPM's conduct in using an automated telephone dialing system to call Plaintiff's cellular phone and George's authorization of those collection tactics. Windstream can easily be subpoenaed in this case if discovery from it is needed. Furthermore, the Court is not persuaded that Windstream has

an interest in the action such that it will be unable to protect its interests or leave it at risk of incurring double, multiple, or inconsistent obligations.

Even if Windstream was a necessary party, neither Defendant has adequately briefed the issue of why dismissal would be justified under Rule 19(b).[8] Accordingly, dismissal for failure to join Windstream is not warranted.

### C. Viability of Claims Against George

Courts have held that an individual acting on behalf of a corporation may be held personally liable for TCPA violations where they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2012 WL 4074620, at *8 (W.D. Mich. June 21, 2012) (citing *Texas v. Am. Blastfax*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001)); s*ee also Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.,* No 3:12-cv-2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014) (finding individual could be personally liable for violations of the TCPA where there was evidence of his personal involvement). George argues that claims against him must be dismissed for failure to state a claim. The Court disagrees. Plaintiff alleges that George was RPM's highest-ranking officer and responsible for all RPM business operations and that he was in charge of implementing TCPA procedures at RPM. (Doc. 18 at PageID 128, ¶ 3, PageID 138, ¶ 39.) At this early stage, the facts pled are sufficient to allege that George personally authorized

---

[8] Notably, the Court asked RPM to do so in its Supplemental filing. RPM completely disregarded and did not address the Court's questions about its Rule 19 analysis in its Supplemental Memorandum. George, who filed his Motion to Dismiss later and is represented by the same attorney as RPM, also did not adequately address Rule 19(b) in his subsequent filings.

the conduct alleged to have violated the TCPA and to therefore withstand a motion to dismiss.[9] As such, George's Motion to Dismiss is denied.

## IV. MOTION FOR COSTS AND ATTORNEY'S FEES

Having found that the Defendants' Motions to Dismiss are without merit, the Court now turns to Plaintiff's Motion for Costs and Attorney's Fees. (Doc. 38.) Plaintiff's counsel, Adam Sadlowski, moves under Federal Rule of Civil Procedure 4 for the costs of service of summons upon Defendant George and for recovery of reasonable attorney's fees incurred in preparing a motion to collect those costs. He argues that George deliberately evaded service and lacked good cause to avoid the unnecessary expense of serving the summons. This case has been rife with needless contention, and evasion of service is among the many disputes that have backlogged the docket of this case and cost the Court unnecessary judicial resources. As set forth below, Plaintiff's motion is well-taken and will be granted.

Under Rule 4(d), "Waiving Service:"

> **(1)** *Requesting a Waiver.* An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons. The notice and request must:
>     **(A)** be in writing and be addressed:
>         **(i)** to the individual defendant; or
>         **(ii)** for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;
>     **(B)** name the court where the complaint was filed;
>     **(C)** be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;
>     **(D)** inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;

---

[9] The Court notes that Plaintiff attached discovery responses in support of its argument that the claims pled against George are viable. The Court does not rely upon those responses in determining whether the Complaint allegations are sufficient to state a claim.

> **(E)** state the date when the request is sent;
> **(F)** give the defendant a reasonable time of at least 30 days after the request was sent--or at least 60 days if sent to the defendant outside any judicial district of the United States--to return the waiver; and
> **(G)** be sent by first-class mail or other reliable means.
>
> **(2)** *Failure to Waive.* If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:
> **(A)** the expenses later incurred in making service; and
> **(B)** the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

Fed. R. Civ. P. 4.

On June 22, 2017, Plaintiff moved for leave to amend the Complaint to assert allegations against Defendant George, which the Court granted on July 14, 2017. (Doc. 16, July 14, 2017 Docket Entry.) On July 14, 2017, Sadlowski promptly sent defense counsel, Flynn, an email with a courtesy copy of the First Amended Complaint, Notice of Lawsuit, and Request to Waive Service of Summons. (Sadlowski Decl., Doc. 38-2 at PageID 553.) Unable to solicit a response from Flynn as to whether George intended to waive service despite his status as counsel for both George and RPM, on July 24, 2017, Sadlowski mailed Flynn the following documents via certified U.S. mail: a First Amended Complaint, Notice of Lawsuit, two copies of the Waiver of Service of Summons, and a postage pre-paid, self-addressed envelope for return of the Waiver to Plaintiff's counsel. (*Id.*) On August 16, 2017, Sadlowski contacted Flynn to ask whether George intended to waive service. (*Id.*) Flynn did not respond. (*Id.*) On August 24, 2017, Plaintiff filed his request for Issuance of Summons with the Court, retained a process server in Washington, and filed the executed summons with the Court on October 9, 2017. (*Id.*; *see* Oct. 9, 2017 Minute Entry.) The Court notes that in the meantime, Flynn had many *other* communications with Sadlowski and the Court, including communications over multiple

13

discovery disputes and filing a Motion to Dismiss. (*See, e.g.,* Doc. 20, Motion to Dismiss filed August 10, 2017; August 18, 2017 Minute Entry re: Discovery Dispute; August 31, 2017 Minute Entry re: Discovery Dispute.)

George argues that Plaintiff is not entitled to the costs of service of summons and reasonable attorney's fees because he did not strictly comply with Rule 4(d). He argues the written notice and request for waiver must be written to the *Defendant*, and Sadlowski addressed this to *Defendant's counsel*. George also claims that he only received eight days to return the waiver. The Court rejects both of these arguments. Communications between Sadlowski and Flynn provided to the Court in support of Plaintiff's Motion make clear that Flynn was—and is—representing George in this matter. Moreover, as Sadlowski points out, he has an ethical duty not to communicate directly to an individual known to be represented by counsel. Furthermore, communications provided to the Court also demonstrate that George was given at least thirty days to return the waiver.

Under Fed. R. Civ. P. 4(d), a defendant may only refuse to return a waiver of summons of service for good cause. Good cause has not been shown here. Rather, defense counsel has demonstrated a pattern of dilatory tactics that have needlessly delayed this case from moving forward. Accordingly, the Court finds that under Rule 4(d)(2), Plaintiff is entitled to the fees and costs of service and reasonable attorney's fees for preparing and defending a motion to obtain such fees and costs.

Sadlowski requests $1,770.00 for attorney's fees and $157.49 for costs of service of summons, which the Court finds reasonable. He is an attorney with 12 years of experience. (Doc. 38-2 at PageID 556–57.) His billing rate is $295/hour, and he spent 3.5 billable hours

preparing his Motion and 2.5 billable hours preparing a reply.[10] (Doc. 38-2 at PageID 552–53, Doc. 42-1 at PageID 645–46.) The Court finds Sadlowski's billing rate to be fair and reasonable. The cost of service of process in Washington was $157.49 is also reasonable given that a process servicer had to be hired to serve George in the state of Washington. (Doc. 38-2 at PageID 553.) Accordingly, the Court finds that Plaintiff is entitled under Rule 4 to recover from George the costs of attorney's fees and service.

## V.  CONCLUSION

For the reasons set forth herein, RPM's Motion to Dismiss (Doc. 20) and George's Motion to Dismiss (Doc. 37) are DENIED. Plaintiff's Motion for Costs and Attorney's Fees (Doc. 38) is GRANTED, and Plaintiff is entitled to recover $157.49 in costs and $1,770.00 in fees from Defendant George.

**IT IS SO ORDERED**.

                                            ___s/Susan J. Dlott_____
                                            Judge Susan J. Dlott
                                            United States District Court

---

[10] Courts in this district often refer to the 1983 Rubin Committee rates as a basis for comparison. *Hunter v. Hamilton Cty. Bd. Of Elections*, No. 1:10-cv-820, 2013 WL 5467751, at *17 (S.D. Ohio Sept. 30, 2013). Judges in the Southern District of Ohio often refer to the 1983 Rubin Committee rates and apply a 4% annual cost-of-living allowance to measure the reasonableness of fees requested. *Id*. That committee arrived at the following categories and hourly rates for 1983: Paralegals—$37.91/hour; Law Clerks—$23.96/hour; Young Associates (2 years of experience or less)—$61.77/hour; Intermediate Associates (2 to 4 years of experience)—$71.62/hour; Senior Associates (4 to 5 years of experience)—$82.81/hour; Young Partners (6 to 10 years of experience)—$96.39/hour; Intermediate Partners (11 to 20 years of experience)—$113.43/hour; and Senior Partners (21 or more years of experience)—$128.34/hour. *Id.* at n.9. By the Court's calculation, an Intermediate Partner Rate in 2018 would be $458.91. Sadlowski's requested rate of $295 is therefore well below the Rubin Rate.