UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| PHILLIP RAMSEY, | : | CASE NO.  1:16-cv-1059 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | Magistrate Judge Karen L. Litkovitz |
| RECEIVABLES PERFORMANCE MANAGEMENT, LLC, *et al*., | : | **MOTION OF PLAINTIFF FOR PARTIAL SUMMARY JUDGMENT** |
| | : | **ON CLAIMS AGAINST** |
| Defendants. | : | **DEFENDANT RECEIVABLES PERFORMANCE MANAGEMENT, LLC** |
| | : | |

_____

Pursuant to Fed. R. Civ. P. 56, Plaintiff Phillip Ramsey ("Plaintiff") moves for partial summary judgment on his claims against Defendants Receivables Performance Management, LLC ("RPM") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227 et seq. (First Claim of the First Amended Complaint), and the Ohio Consumer Sales Practices Act ("Ohio CSPA"), Ohio Revised Code § 1345 et seq. (Second Claim of the First Amended Complaint).[1] As shown in the Memorandum in Support, RPM violated the TCPA and the Ohio CSPA by calling Plaintiff's cellular telephone without his consent a total of 245 times over the course of four and a half months in 2015.

_____

[1] Plaintiff does not move for summary judgment on the following claims and issues because genuine disputes of material fact exist for the trier of fact to resolve: (1) Plaintiff's claims under the TCPA and Ohio CSPA against co-Defendant Howard George; and (2) whether Defendants RPM and Howard George willfully and knowingly violated the TCPA, warranting trebling of statutory damages to $1,500.00 for each of the 245 violations of the TCPA.

Plaintiff requests the Court find as a matter of law that:  (1) RPM violated the TCPA and the Ohio CSPA by making 245 unlawful calls to Plaintiff's cellular telephone; (2) Plaintiff is entitled to a minimum statutory award of $500.00 for each of RPM's 245 calls made in violation of the TCPA, totaling $122,500.00 in statutory damages under the TCPA; (3) Plaintiff is entitled to a minimum statutory award of $200.00 for each of RPM's 245 calls made in violation of the Ohio CSPA, totaling  $49,000.00 in statutory damages under the Ohio CSPA; and (4) Plaintiff is entitled to his reasonable attorney's fees under the Ohio CSPA.

A proposed order is attached as Exhibit A with this Motion.

Respectfully submitted,

/s/   *Adam V. Sadlowski*
Adam V. Sadlowski, Trial Attorney (0079582)
Cori R. Besse (0081447)
SADLOWSKI & BESSE L.L.C.
11427 Reed Hartman Highway, Suite 217
Blue Ash, Ohio 45241
Tel:  (513) 618-6595
Fax: (513) 618-6442
asadlowski@sb-lawyers.com
cbesse@sb-lawyers.com

Attorneys for Plaintiff Phillip Ramsey

## **Table of Contents**

I.      INTRODUCTION AND SUMMARY ............................................................................... 1

II.     SUMMARY OF UNDISPUTED BACKGROUND FACTS ............................................ 2

III.    SUMMARY JUDGMENT STANDARD ........................................................................ 2

IV.     THE TCPA PROHIBITED RPM FROM CALLING PLAINTIFF'S CELLULAR
        TELEPHONE USING AN ATDS WITHOUT "PRIOR EXPRESS CONSENT" ........... 3

V.      RPM DID NOT HAVE PLAINTIFF'S "PRIOR EXPRESS CONSENT" UNDER
        THE TCPA TO CALL HIS CELLULAR TELEPHONE USING AN ATDS ................. 5

VI.     THE NOBLE PREDICTIVE DIALER IS AN ATDS UNDER THE TCPA AS A
        MATTER OF LAW .......................................................................................................... 7

        A.      The Noble Predictive Dialer Used by RPM Automatically Dials from a
                Stored, Pre-Programed List of Telephone Numbers Without Human
                Intervention………………………………………………………………………8

        B.      RPM's Noble Predictive Dialer Is an ATDS Under Binding FCC Orders………..8

        C.      The 2003 and 2008 FCC Orders Apply to this Case as a Matter of Law………..14

        D.      RPM's Noble Predictive Dialer Is an ATDS Under the TCPA's
                Statutory Text…………………………………………………………………………17

VII.    RPM VIOLATED THE OHIO CSPA AS A MATTER OF LAW…………… .............. 20

**LIST OF EXHIBITS**

| Exhibit | Description |
|---|---|
| | |
| A | Proposed Order Granting Motion of Plaintiff for Partial Summary Judgment on Claims Against Defendant Receivables Performance Management, LLC |
| B | Plaintiff's Statement of Proposed Undisputed Facts |
| C | Affidavit of Phillip Ramsey in Support of Motion of Plaintiff for Partial Summary Judgment on Claims Against Defendant Receivables Performance Management, LLC (Affidavit includes Exhibits C-1 through C-11) |
| D | List of Federal District Courts Recognizing a Consumer's Right to Revoke "Prior Express Consent" as a Matter of Law Under the TCPA |
| E | In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014 (July 3, 2003) |
| F | In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559 (Jan. 4, 2008) |
| G | In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961 (July 10, 2015) |
| H | ACA Int'l v. FCC, 885 F.3d 687 (D.C. Cir. 2018) |
| I | List of Federal Courts Addressing Validity of 2003 and 2008 FCC Orders Post-ACA Int'l |
| J | Lucas v. DeSilva Auto. Servs., No. 1:16-cv-790, 2018 U.S. Dist. LEXIS 72818, 2018 WL 2020744 (S.D. Ohio May 1, 2018) |
| K | Ammons v. Ally Fin., Inc., 326 F.Supp. 3d 578 (M.D. Tenn. 2018) |
| L | Reyes v. BCA Fin. Servs., Inc., 312 F. Supp. 3d 1308 (S.D. Fla. 2018) |
| M | Strauss v. CBE Grp., Inc., 173 F. Supp. 3d 1302 (S.D. Fla. 2016) |
| N | In re Collecto Inc., No. 4-MD-02513-RGS, 2016 U.S. Dist. LEXIS 16319, 2016 WL 552459 (D. Mass. Feb. 10, 2016) |
| O | Marks v. Crunch San Diego, LLC,  904 F.3d 1041 (9th Cir. 2018) |
| P | Heard v. Nationstar Mortg. LLC, No. 2:16-cv-00694-MHH, 2018 U.S. Dist. LEXIS 143175, 2018 WL 4028116 (N.D. Ala. Aug. 22, 2018) |

| Q | RPM Pick Report for Plaintiff's 1st Windstream Report |
|---|---|
| R | RPM Pick Report for Plaintiff's 2nd Windstream Report |
| S | State of Ohio Certificate of Registration for Windstream Communications, LLC |

## MEMORANDUM IN SUPPORT

I.      INTRODUCTION AND SUMMARY

The TCPA prohibits the use of an automatic telephone dialing system ("ATDS") to call a person's cellular telephone without their "prior express consent." In addition, the Ohio CSPA prohibits a "supplier" such as RPM from engaging in "unfair, deceptive or unconscionable" acts in connection with the collection of a debt arising from a consumer transaction. The Ohio CSPA's prohibitions specifically include TCPA violations by debt collectors. This case arises out of RPM's unlawful debt collection efforts against Plaintiff on behalf of one of its clients, Windstream Communications, LLC ("Windstream"). RPM used its Noble Predictive Dialer (an ATDS under the TCPA) to robocall Plaintiff's cellular phone at least 245 times without Plaintiff's "prior express consent" in an attempt to collect a consumer debt Plaintiff did not even owe.

"Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." Gager v. Dell Financial Services, LLC, 727 F.3d 265, 268 (3d Cir. 2013). "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." Mims v. Arrow Financial Services, LLC, 565 U.S. 368, 370-71, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012). It is hard to imagine a better example of robocall harassment and abuse of a consumer than this case—precisely the type of conduct the TCPA and Ohio CSPA were passed to prevent.

This Motion is dispositive of three core <u>legal</u> issues in this case:

1. There is no genuine dispute of material fact that RPM did not have Plaintiff's "prior express consent" under the TCPA to call Plaintiff's cellular telephone using an ATDS;

2. There is no genuine dispute of material fact that the Noble Predictive Dialer used by RPM to call Plaintiff's cellular telephone 245 times constitutes an ATDS under both binding Federal Communication Commission ("FCC") Orders and the TCPA's statutory definition of an ATDS because it automatically dials without human intervention from a stored, pre-programmed list of telephone numbers; and

3. There is no genuine dispute of material fact that RPM: (a) violated the TCPA 245 times by calling Plaintiff's cellular telephone using an ATDS without his "prior express consent," and (b) violated the Ohio CSPA 245 times by engaging in "unfair, deceptive, or unconscionable" acts or practices against Plaintiff in connection with the collection of a debt arising from a consumer transaction.

Accordingly, this Court should grant Plaintiff partial summary judgment as to his TCPA and Ohio CSPA claims against RPM.

## II.   <u>SUMMARY OF UNDISPUTED BACKGROUND FACTS</u>

A summary of the undisputed background facts underlying this Motion is fully outlined in Plaintiff's Statement of Proposed Undisputed Facts ("SPUF") (attached as Exhibit B).

## III.   <u>SUMMARY JUDGMENT STANDARD</u>

This Motion for summary judgment should be granted because there is no genuine dispute as to any material fact presented by the Motion and Plaintiff, as the movant, is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202, 251-252 (1986). The Motion presents solely <u>legal</u> questions for the Court. Plaintiff asks the Court to find that as a matter of law: (1) RPM did not have Plaintiff's "prior express consent" under the TCPA to call his cellular telephone using an ATDS; (2) the Noble Predictive Dialer used by RPM to place 245 calls to Plaintiff's cellular telephone is an ATDS under the TCPA; and (3) RPM violated both the TCPA and Ohio CSPA 245 separate times.

IV.    THE TCPA PROHIBITED RPM FROM CALLING PLAINTIFF'S CELLULAR
        TELEPHONE USING AN ATDS WITHOUT "PRIOR EXPRESS CONSENT"

The TCPA makes it "unlawful for any person to place a call 'using any automatic telephone

dialing system . . . to a cell phone number without obtaining the 'prior express consent of the

called party.'" Baisden v. Credit Adjustments, Inc., 813 F.3d 338, 342 (6th Cir. 2016). In ruling

on this Motion, the Court should consider the following core legal tenets of the TCPA.

First, the TCPA is a strict liability consumer protection statute that is remedial in

nature. Am. Copper & Brass, Inc. v. Lake City Indus. Prods., 757 F.3d 540, 543 (6th Cir. 2014)

("the TCPA is essentially a strict liability statute") (internal quotation marks omitted); Parchman

v. SLM Corp., 896 F.3d 728, 740-41 (6th Cir. 2018) ("In all, then, we think that claims under

the TCPA are best characterized as remedial."); Michel v. WM Healthcare Sols., Inc., No. 1:10-

cv-638, 2014 U.S. Dist. LEXIS 15606, 2014 WL 497031, at *26 (S.D. Ohio Feb. 7, 2014)

("[T]he TCPA is essentially a strict liability statute[.]") (J, Dlott). Consequently, to the extent

there is any ambiguity or room for interpretation of the TCPA or the application of relevant FCC

Orders and caselaw, the Court must construe the TCPA liberally in favor of Plaintiff as the

consumer given the remedial nature of the TCPA. Atchison, Topeka & Santa Fe Ry. Co. v. Buell,

480 U.S. 557, 562, 107 S. Ct. 1410, 94 L. Ed. 2d 563 (1987) (requiring courts to apply a

"liberal construction [to remedial statutes] in order to accomplish [Congress's] objects")

(citation omitted); Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC, 883 F.3d 459, 474

(4th Cir. 2018) (holding the TCPA "should be liberally construed and . . . interpreted . . . in a

manner tending to discourage attempted evasions by wrongdoers.") (citation and internal

quotation marks omitted); Gager, 727 F.3d at 271 ("Because the TCPA is a remedial statute, it

should be construed to benefit consumers.") (citations omitted).

3

<u>Second</u>, RPM bears burden of establishing "prior express consent" under the TCPA to make automated calls to Plaintiff's cellular telephone. <u>Zehala v. Am. Express</u>, No. 2:10-cv-848, 2012 U.S. Dist. LEXIS 65774, 2012 WL 1657061, at *12 (S.D. Ohio May 9, 2012) ("Defendant bears the burden of establishing prior consent" under the TCPA.); <u>Van Patten v. Vertical Fitness Grp., LLC</u>, 847 F.3d 1037, 1044 (9th Cir. 2017) (Prior express consent "is an affirmative defense for which the defendant bears the burden of proof.").

<u>Third</u>, the TCPA permits consumers to revoke either orally or in writing "prior express consent" at any time through any reasonable method. <u>In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 30 F.C.C. Rcd. 7961, 7996 (July 10, 2015) (binding 2015 FCC Order; finding "consumers have a right to revoke consent, using any reasonable method including orally or in writing."); <u>ACA Int'l v. FCC</u>, 885 F.3d 687, 695, 709 (D.C. Cir. 2018) (affirming in part FCC's 2015 TCPA Order; "We sustain . . . the Commission's ruling that a party can revoke consent through any reasonable means clearly expressing a desire to receive no further calls or texts . . . . It is undisputed that consumers who have consented to receiving calls otherwise forbidden by the TCPA are entitled to revoke their consent."); <u>Van Patten</u>, 847 F.3d at 1048 ("[W]e agree that the TCPA permits consumers to revoke their prior express consent to be contacted by telephone autodialing systems."); <u>Osorio v. State Farm Bank, F.S.B.</u>, 746 F.3d 1242, 1255 (11th Cir. 2014) (holding "that allowing consent to be revoked orally is consistent with the 'government interest articulated in the legislative history of the Act [that] enabl[es] the recipient to contact the caller to stop future calls.'"); <u>Brenner v. Am. Educ. Servs.</u>, 575 Fed. Appx. 703, 704 (8th Cir. 2014) (reversing grant of summary judgment and instructing trial court to consider whether the plaintiff had revoked his prior consent"); <u>Gager</u>, 727 F.3d at 265 (holding that the TCPA allows a consumer to revoke her "prior express consent").

4

The Sixth Circuit Court of Appeals also recently acknowledged in dicta a consumer's right to revoke "prior express consent" under the TCPA. Stevens-Bratton v. Trugreen, Inc., 675 F. App'x 563, 569 (6th Cir. 2017) (reversing district court granting order compelling arbitration of claims brought under the TCPA; noting that "In fact, the right to call someone's phone number is revocable by that person at any point . . . .").[2]

Last, consumers who receive prohibited calls in violation of the TCPA are entitled to statutory damages of "at least $500 per violation." Hill v. Homeward Residential, Inc., 799 F.3d 544, 548 (6th Cir. 2015) (citing 47 U.S.C. § 227(b)(3)(B)).

V.     RPM DID NOT HAVE PLAINTIFF'S "PRIOR EXPRESS CONSENT" UNDER THE TCPA TO CALL HIS CELLULAR TELEPHONE USING AN ATDS

There is no genuine of dispute of material fact that RPM did not have Plaintiff's "prior express consent" to call his cellular telephone using an ATDS. The undisputed facts show that, to the extent Plaintiff ever even provided it to Windstream, Plaintiff revoked both orally and in writing any purported "prior express consent" with Windstream prior to RPM receiving Plaintiff's accounts from Windstream and beginning its debt collection efforts against Plaintiff.

First, Plaintiff orally revoked any purported "prior express consent" during numerous telephone calls Plaintiff had with Windstream representatives in 2014. SPUF, ¶¶10-18. During these telephone calls, Plaintiff repeatedly instructed Windstream to stop its collection efforts and to "stop calling" him. Id. In particular, on October 31, 2014, Plaintiff called Windstream and cancelled all services with Windstream, and again instructed Windstream to "stop all calls" and "never contact him again." Id. As Plaintiff cancelled all services with Windstream at this time, his

---

[2] Attached as Exhibit D is a non-exhaustive list of federal district courts recognizing a consumer's right to revoke "prior express consent" as a matter of law under the TCPA.

instructions to "stop all calls" and "never contact him again" applied to all his Windstream accounts. Id. These instructions were explicit, particularly in light of Plaintiff permanently terminating all services during this same call. Id.

Second, Plaintiff sent a letter dated November 16, 2014 to Windstream in which he effectively revoked any purported "prior express consent" under the TCPA. SPUF ¶18. In the November 16, 2014 letter, Plaintiff expressly instructed both Windstream "and any affiliated collection agencies to cease all communications with me in regards to the Windstream account associated with Phillip Ramsey" and "once you receive a letter of dispute it is your obligation to cease all communication with Phillip Ramsey . . . ." Id. (emphasis added). Plaintiff sent this letter via U.S. Postal Service Priority 2-Day Mail and tracking records show Windstream received the letter on November 19, 2014. Id. In fact, RPM's own general counsel (Mark Case) and corporate witness (Chris Vittoz) conceded the November 16, 2014 letter to Windstream was a valid revocation of consent under the TCPA, and RPM would have ceased all communications with Plaintiff had RPM known of Plaintiff's letter. SPUF, ¶47. RPM's general counsel also admitted RPM did not have a policy or procedure in place to determine if a consumer had communicated instructions to Windstream to "cease communications" prior to that consumer's Windstream account being placed with RPM. SPUF, ¶48.

Third, RPM has not produced any evidence Plaintiff provided "prior express consent" to be called on his cellular telephone by an ATDS. Indeed, RPM conceded Plaintiff never provided RPM with his cellular telephone number or with consent to call him. SPUF, ¶¶50-51. In addition, the evidence shows Plaintiff's oral instructions to Windstream on October 31, 2014 and written instructions on November 16, 2014 to cease all communications were effective prior to Windstream even placing Plaintiff's accounts with RPM for collections. SPUF, ¶¶10-18, 45-46.

6

The Windstream accounts were not placed with RPM until February 19, 2015 and March 30, 2015, which is several months after Plaintiff had already instructed Windstream (both orally and in writing) to cease all communications.  SPUF, ¶¶41, 43.

VI.     THE NOBLE PREDICTIVE DIALER IS AN ATDS AS A MATTER OF LAW

The Noble Predictive Dialer used by RPM to call Plaintiff's cellular telephone 245 times automatically dials from a stored, pre-programed list of telephone numbers without human intervention. SPUF, ¶¶30-53. The FCC issued Orders in 2003 and 2008 finding this type of predictive dialer constitutes an ATDS under the TCPA as a matter of law.

In 2015, the FCC issued an Order expanding the definition of an ATDS to include not only equipment that had the current capacity to make automated calls (such as RPM's Noble Predictive Dialing System), but also equipment that had the potential or future capacity to make automated calls. In ACA Int'l v. FCC, the D.C. Circuit reviewed the 2015 FCC Order and "set aside" portions of the 2015 FCC Order. 885 F.3d 687, 695 (D.C. Cir. 2018).

Post-ACA Int'l, courts are split as to whether ACA Int'l invalidated the definition of an ATDS contained in the 2003 and 2008 FCC Orders, in addition to portions of the 2015 FCC Order. A majority of courts have held the prior 2003 and 2008 FCC Orders remain valid and binding on federal district courts. The Court should adopt the majority position. If this Court adopts the majority position, then under the Hobbs Act (28 U.S.C. § 2341 et seq.) the Court must apply the definition of ATDS found in the 2003 and 2008 FCC Orders and find the Noble Predictive Dialer is an ATDS as a matter of law.

Even if this Court finds the 2003 and 2008 FCC Orders were invalidated by ACA Int'l, this Court should adopt the holdings in Marks v. Crunch San Diego, LLC,  904 F.3d 1041 (9th Cir. 2018), Adams v. Ocwen Loan Servicing, LLC, No. 18-81028, 2018 U.S. Dist. LEXIS 184513,

2018 WL 6488062 (S.D. Fla. Oct. 26, 2018), Evans v. Pa. Higher Educ. Assistance Agency, No. 3:16-cv-82-TCB, 2018 U.S. Dist. LEXIS 221611, 2018 WL 6362637 (N.D. Ga. Oct. 11, 2018), and Heard v. Nationstar Mortg. LLC, No. 2:16-cv-00694-MHH, 2018 U.S. Dist. LEXIS 143175, 2018 WL 4028116 (N.D. Ala. Aug. 22, 2018), and find the Noble Predictive Dialer is an ATDS under the statutory definition of the TCPA, even in the absence of any FCC Orders.

A. **The Noble Predictive Dialer Used by RPM Automatically Dials from a Stored, Pre-Programmed List of Telephone Numbers Without Human Intervention**

There is no genuine dispute of material fact that the Noble Predictive Dialer used by RPM to call Plaintiff's cellular telephone 245 times automatically dials without human intervention from a stored, pre-programmed list of telephone numbers. SPUF, ¶¶30-53. RPM's corporate witness, Chief Operating Officer, Christopher Vittoz, testified the Noble Predictive Dialer used by RPM to call Plaintiff automatically: (1) made calls from a stored list of pre-programmed telephone numbers, (2) made calls sequentially according to a pre-programmed time for the calling campaign, (3) transferred the calls to an RPM debt collector to speak with the consumer, and (4) disconnected the call if the consumer did not answer—all without human intervention. SPUF, ¶¶30-53. Under the 2003 and 2008 FCC Orders and the TCPA's statutory definition of an ATDS, the Noble Predictive Dialer used by RPM is an ATDS as a matter of law.

B. **RPM's Noble Predictive Dialer Is an ATDS Under Binding 2003 and 2008 FCC Orders**

The FCC is the agency charged by Congress to implement rules and orders regarding the TCPA and has repeated ruled that "predictive dialers" such as the Noble Predictive Dialer used by RPM to call Plaintiff 245 times constitute an ATDS under the TCPA. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶133 (July 3, 2003) ("[T]he Commission finds that a predictive dialer falls within the meaning and statutory

8

definition of 'automatic telephone dialing equipment' and the intent of Congress.") (the "2003 FCC Order") (attached as Exhibit E); In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559, ¶12 (Jan. 4, 2008) ("[W]e affirm that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers.") (the "2008 FCC Order") (attached as Exhibit F). The Hobbs Act requires the Court to defer to the rulings of the FCC Orders, which are binding on this Court. Therefore, as a matter of law, RPM's Noble Predictive Dialer is an ATDS under the TCPA based on the 2003 and 2008 FCC Orders.

### 1. The 2003 and 2008 FCC Orders

In 2003, the FCC addressed the types of equipment that constitute an ATDS under the TCPA. In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014 (2003). The FCC defined a predictive dialer as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." Id. at ¶131. "The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." Id. Predictive dialers use a stored database of numbers which could then be dialed at a rate to ensure that when a consumer answered the phone, a representative would be available to take the call. Id. at ¶146.

After detailing how predictive dialers functioned, the FCC ruled predictive dialers fall within the statutory definition of an ATDS, finding: "to exclude from these restrictions equipment that use predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result . . . [and] [t]herefore, the Commission finds that a predictive dialer falls within the meaning and

statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." <u>Id</u>. at ¶133. In so ruling, the FCC recognized the basic function of such equipment has not changed — the capacity to dial numbers without human intervention. <u>Id</u>. at ¶132. Further, the 2003 FCC Order makes clear predictive dialers that cannot be programmed to generate random or sequential phone numbers still satisfy the statutory definition of an ATDS under the TCPA. <u>Id</u> at ¶131, n.432.

In 2008, the FCC revisited whether a predictive dialer constitutes an ATDS. <u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 23 F.C.C. Rcd. 559 (Jan. 4, 2008). Specifically, the FCC was asked to determine whether a predictive dialer meets the definition of an autodialer "only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists." <u>Id</u>. at ¶12. The FCC noted the petitioner did not raise any "new information about predictive dialers that warrants reconsideration of these findings" and affirmed the 2003 FCC Order's definition of an ATDS. <u>Id</u>. at ¶¶12-14.

In 2012, the FCC issued another order reiterating its 2003 and 2008 Orders, finding the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." <u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 27 FCC Rcd. 15391, 15392 fn. 5 (Nov. 29, 2012).

### 2. The 2015 FCC Order

In 2015, the FCC issued another declaratory ruling that (among other things) expanded the definition of an ATDS under the TCPA. <u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 30 FCC Rcd. 7961 (July 10, 2015) ("2015 FCC Order") (attached as Exhibit G). In the 2015 FCC Order, the FCC determined the "capacity" of calling equipment included not just its current functionalities, but "future or potential capabilities" with

modifications, such as software changes. Id. at 7974. The FCC also reaffirmed its prior position that predictive dialers fall within the statutory definition of an ATDS, regardless of whether the dialers have the "capacity" to dial phone numbers randomly or sequentially. Id at 7971-74.

After issuing the 2015 FCC Order, a large number of regulated entities challenged the FCC's expanded definition of an ATDS, and the petitions were consolidated in the D.C. Circuit. In ACA Int'l v. FCC, the D.C. Circuit reviewed the 2015 FCC Order and "set aside" the FCC's finding that "the capacity of calling equipment includes its potential functionalities or future possibility, not just its present ability." 885 F.3d 687, 695 (D.C. Cir. 2018) (internal quotations omitted) (attached as Exhibit H). The ACA Int'l court observed, "the Commission adopted an expansive interpretation of 'capacity' having the apparent effect of embracing any and all smartphones: the device routinely used by the vast majority of citizens to make calls and send messages (and for many people, the sole phone equipment they own)" and that "[i]t is undisputed that essentially any smartphone, with the addition of software, can gain the statutorily enumerated features of an autodialer and thus function as an ATDS." Id. at 696. Such an expansive definition, in the ACA Int'l court's view, was untenable since "if every smartphone qualifies as an ATDS, the statute's restrictions on autodialer calls assume an eye-popping sweep" since even "an uninvited call or message from a smartphone violates the statute even if autodialer features were not used to make the call or send the message." Id. at 697. Thus, the ACA Int'l court determined the "Commission's interpretation of the term 'capacity' in the statutory definition of an ATDS is utterly unreasonable in the breadth of its regulatory [in]clusion." Id. at 700.

### 3. The 2003 and 2008 FCC Orders Post-ACA Int'l

While seemingly all agree ACA Int'l invalidated the portion of the 2015 FCC Order expanding the definition of an ATDS to include "potential or future capabilities," federal courts are split as to whether the 2003 and 2008 FCC remain valid post-ACA Int'l.  The majority of

11

federal courts expressly addressing the issue have determined the 2003 and 2008 FCC Orders remain valid and binding on district courts post-<u>ACA Int'l</u>, while a minority of federal courts have taken a divergent position. Attached as Exhibit I is a list of federal courts directly addressing if the 2003 and 2008 FCC Orders remain valid and binding on district courts post-<u>ACA Int'l</u>.

The Sixth Circuit has not addressed the continuing validity of the 2003 and 2008 FCC Orders post-<u>ACA Int'l</u>. The only case within the Southern District of Ohio addressing the impact of <u>ACA Int'l</u> is <u>Lucas v. DeSilva Auto. Servs.</u>, where Magistrate Judge Stephanie K. Bowman stated in dicta <u>ACA Int'l</u> had only "vacated several aspects of" the 2015 FCC Order, which supports the majority's (and Plaintiff's) position that the 2003 and 2008 FCC Orders remain valid and binding on district courts. No. 1:16-cv-790, 2018 U.S. Dist. LEXIS 72818, 2018 WL 2020744, at *8 n.9 (S.D. Ohio May 1, 2018) (Bowman, M.J.) (attached as Exhibit J). Two district courts within the Sixth Circuit directly addressing the issue took diverging views. Compare a reported case, <u>Ammons v. Ally Fin., Inc.</u>, 326 F.Supp. 3d 578, 587 (M.D. Tenn. 2018) (granting plaintiff's summary judgment on whether defendant's predictive dialer is an ATDS; holding district courts are bound by the Hobbs Act and required to apply the 2003 and 2008 FCC Orders; stating "In the wake of <u>ACA Int'l</u>, this Court joins the growing number of other courts that continue to rely on the interpretation of § 227(a)(1) set forth in prior FCC rulings.") (attached as Exhibit K), with an unreported case, <u>Gary v. TrueBlue, Inc.</u>, No. 17-cv-10544, 2018 U.S. Dist. LEXIS 128782, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018) (<u>ACA Int'l</u> vacated 2003 and 2008 FCC Orders).

The Third Circuit has acknowledged the invalidation of the 2015 FCC Order, but did not take a definite position on the continuing validity of the 2003 and 2008 FCC Orders. <u>Dominguez v. Yahoo, Inc.</u>, 894 F.3d 119 (3d Cir. 2018) ("In light of the D.C. Circuit's holding" in <u>ACA Int'l</u>, "we interpret the statutory definition of an autodialer as we did prior to the issuance of the 2015

12

Declaratory Ruling."). Thus, three district court cases from the Third Circuit have found the 2003 and 2008 FCC Orders remain valid and binding based on the Third Circuit's holding in Dominguez. Somogyi v. Freedom Mortg. Corp., No. 17-6546, 2018 U.S. Dist. LEXIS 129697, 2018 WL 3656158, at *10 (D.N.J. Aug. 2, 2018) ("As the Third Circuit recently observed, however, FCC Orders issued prior to 2015 appear to have survived whatever criticism was levied by the D.C. Circuit."); Sieleman v. Freedom Mortg. Corp., No. 17-13110, 2018 U.S. Dist. LEXIS 129698, 2018 WL 3656159, at *7 n.4 (D.N.J. Aug. 2, 2018) ("In Dominguez, the Third Circuit addressed the scope of the ACA Int'l opinion for the first time. Though the majority of the analysis focused on 'the present capacity question,' the Court indicated that the 2003 FCC Order was not overruled."); Wilson v. Quest Diagnostics Inc., No. 2:18-11960, 2018 U.S. Dist. LEXIS 212023, 2018 WL 6600096, at *7 (D.N.J. Dec. 10, 2018) (relying on Dominguez and holding "… the D.C. Circuit did not invalidate the 2003 and 2008 Orders, only the 2015 Order. Therefore, a predictive dialer qualifies as an ATDS so long as it has 'the [present] capacity to dial numbers without human intervention'"). Two district courts in the Third Circuit differ. Richardson v. Verde Energy USA, Inc., No. 15-6325, 2018 U.S. Dist. LEXIS 212558, 2018 WL 6622996, at *14 (E.D. Pa. Dec. 14, 2018) (holding ACA Int'l set aside the 2003 and 2008 FCC Orders); Fleming v. Associated Credit Servs., 342 F. Supp. 3d 563, 574 (D.N.J. 2018) (same).

Similarly, the Second Circuit acknowledged the invalidation of the 2015 FCC Order, but did not expressly address whether the 2003 and 2008 FCC Orders were invalidated. King v. Time Warner Cable Inc., 894 F.3d 473, 476-77 (2d Cir. 2018) (holding that ACA Int'l "invalidated that [FCC 2015 Declaratory Ruling] and thereby removed any deference we might owe to the views the FCC expressed in it"). The only district court within the Second Circuit to directly address the issue determined the Second Circuit's holding in King did not find ACA Int's invalidated the 2003

13

and 2008 FCC Orders, and therefore the 2003 and 2008 FCC Orders remain valid and binding on district courts. <u>Duran v. La Boom Disco, Inc.</u>, No. 17-cv-6331, 2019 U.S. Dist. LEXIS 30012, 2019 WL 959664, at *23-30 (E.D.N.Y. Feb. 25, 2019) (citing <u>King</u> for proposition that 2003 and 2008 FCC Orders remain valid and binding on district courts post-<u>ACA Int'l</u>).

C.   <u>The 2003 and 2008 FCC Orders Apply to this Case as a Matter of Law</u>

The Court should find: (1) <u>ACA Int'l</u> did not invalidate the 2003 and 2008 FCC Orders; (2) this Court is bound by the Hobbs Act to apply the 2003 and 2008 FCC Orders, and; (3) the Noble Predictive Dialer used by RPM to call Plaintiff's 245 times is an ATDS as a matter of law under the 2003 and 2008 Orders.

1.   <u>2003 and 2008 FCC Orders Are Valid and Binding Post-ACA Int'l</u>

The Court should follow the holding of its Sixth Circuit sister court in <u>Ammons</u> and adopt the majority position finding <u>ACA Int'l</u> did not invalidate the 2003 and 2008 FCC Orders for the following reasons. <u>First</u>, <u>ACA Int'l</u> did not directly address or rule on the validity of the 2003 and 2008 FCC Orders. "[N]owhere in the D.C. Circuit's opinion are the 2003 and 2008 FCC Orders overruled. Indeed, that would have been impossible given that the time to appeal those orders had long passed. And when addressing those prior orders, the D.C. Circuit merely said that it had jurisdiction to address the recent pronouncements and clarifications issued in 2015, not whether the 2003 and 2008 orders remained valid." <u>Reyes v. BCA Fin. Servs., Inc.</u>, 312 F. Supp. 3d 1308, 1321 (S.D. Fla. 2018) (granting plaintiff's summary judgment; finding Noble Predictive Dialer is an ATDS as a matter of law) (attached as Exhibit L).

<u>Second</u>, "when the D.C. Circuit said that the FCC had provided too expansive an interpretation of the TCPA, the D.C. Circuit was not referring to the prior or recent rulings equating

predictive dialers to ATDSs. Rather, the D.C. Circuit was referring to the FCC's interpretation of

the TCPA as encompassing devices that have both the present and <u>future</u> capacity to act as ATDSs.

That future- or potential-capacity interpretation was problematic because it had 'the apparent effect

of embracing any and all smartphones' given that 'essentially any smartphone, with the addition

of software, can gain the statutorily enumerated features of an autodialer and thus function as an

ATDS.'" <u>Id</u>. (quoting <u>ACA Int'l</u>, 885 F.3d at 696). In this case, there is no issue concerning the

Noble Predictive Dialer's present versus future capacity. Although RPM may dispute that Noble

Predictive Dialer is an ATDS, the issue before the Court is not whether RPM could *later* convert

it into an ATDS. Rather, the Noble Predictive Dialer is an ATDS "as *currently* configured and

utilized. Therefore, the 2015 FCC order concerning present versus future capacity would not have

had an impact in this case anyway, let alone <u>ACA Int'l's</u> decision concerning that issue." <u>Id</u>.

<u>Third</u>, <u>ACA Int'l</u> rejected the FCC's have-your-cake-and-eat-it-too approach to the 2015

FCC Order. The <u>Reyes</u> decision provides a succinct explanation of this issue:

> "The FCC was of 'two minds on the issue' of whether 'a device must be able to
> generate and dial random or sequential numbers to meet the TCPA's definition of
> an autodialer,' or whether 'that equipment can meet the statutory definition even if
> it lacks that capacity.' The FCC answered 'yes' and 'yes,' i.e., it *must have* that
> ability and it *may lack* that ability, two conflicting answers that the D.C. Circuit
> could not accept because it provided no meaningful guidance. But what *ACA
> Int'l* did not do is endorse one interpretation over the other, even implicitly. *ACA
> Int'l* did not say that a predictive dialer, or any other type of device, must be able
> to generate and dial random or sequential numbers to meet the TCPA's definition
> of an autodialer. Nor did it say that a predictive dialer, or any other type of device,
> may lack that capacity. In fact, the D.C. Circuit said that '[i]t might be permissible
> for the Commission to adopt either interpretation.' But what the FCC could not do
> was 'espouse both competing interpretations in the same order.' <u>Reyes</u>, 312 F.
> Supp. 3d at 1321-22.

<u>Lastly</u>, to the extent there is any reasonable uncertainty as to the validity of the 2003 and

2008 FCC Orders post-<u>ACA Int'l</u>, the Court should construe this issue liberally in favor of Plaintiff

as the consumer given the TCPA is a remedial consumer statute and the 2003 and 2008 FCC Orders necessarily carry out that objective. <u>Atchison</u>, 480 U.S. at 562; <u>Parchman</u>, 896 F.3d at 740-41.

> 2.    The Hobbs Act Requires the Court to Apply the 2003 and 2008 FCC Orders

Under the Hobbs Act, this Court is bound by the FCC's TCPA Orders. 28 U.S.C. § 2342; <u>Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC</u>, 883 F.3d 459, 466 (4th Cir. 2018) ("the jurisdictional command of the Hobbs Act requires a district court to apply FCC interpretations of the TCPA."); <u>Murphy v. DCI Biologicals Orlando, LLC</u>, 797 F.3d 1302, 1307 (11th Cir. 2015) (district courts "may not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation[.]"). Therefore, if the Court determines the 2003 and 2008 FCC Orders are valid post-<u>ACA Int'l</u>, then the Court's legal analysis on the ATDS issue is complete because the 2003 and 2008 FCC Orders are binding on the Court under the Hobbs Act. <u>Leyse v. Clear Channel Broad., Inc.</u>, 545 F. App'x 444, 453-55 (6th Cir. 2013) (holding "we would find [the 2003 FCC Order] to be an 'order' governed by the Hobbs Act"); <u>Mais v. Gulf Coast Collection Bureau, Inc.</u>, 768 F.3d 1110, 1121 (11th Cir. 2014) (the Hobbs Act "unambiguously deprive[s] the federal district courts of jurisdiction to invalidate FCC orders" and "the district court was without jurisdiction to consider the wisdom and efficacy of the 2008 FCC Ruling").

> 3.    The Noble Predictive Dialer Is an ATDS Under the 2003 and 2008 FCC Orders As a Matter of Law

Federal district courts both pre- and post-<u>ACA Int'l</u> have expressly held the Noble Predictive Dialer constitutes an ATDS under the TCPA as a matter of law under the 2003 and 2008 FCC Orders. <u>Reyes</u>, 312 F. Supp. 3d at 1312-23 (granting in part plaintiff's motion for summary judgment; finding 2003 and 2008 FCC Orders valid and binding post-<u>ACA Int'l</u>; holding defendant's Noble Predictive Dialer is an ATDS as a matter of law because it "automatically dials

telephone numbers without human intervention."); <u>Strauss v. CBE Grp., Inc.</u>, 173 F. Supp. 3d 1302, 1309 (S.D. Fla. 2016) (granting in part plaintiff's summary judgment; holding under the 2003 FCC Order "[a] predictive dialer constitutes an ATDS within the meaning of the TCPA" and therefore defendant debt collector's Noble Predictive Dialer is an ATDS as a matter of law) (attached as Exhibit M); <u>In re Collecto Inc.</u>, No. 4-MD-02513-RGS, 2016 U.S. Dist. LEXIS 16319, 2016 WL 552459, at *10-13 (D. Mass. Feb. 10, 2016) (denying defendant's summary judgment; finding Noble Predictive Dialer an ATDS as a matter of law as it automatically dialed from a stored, pre-programmed list of numbers) (attached as Exhibit N).

Here, as in <u>Reyes</u>, <u>Strauss</u>, and <u>In re Collecto Inc.</u>, the Court should find the Noble Predictive Dialer used by RPM constitutes an ATDS as a matter of law under the 2003 and 2008 FCC Orders because there is no genuine dispute of material fact RPM used it to automatically dialed without human intervention from a stored, pre-programmed list of telephone numbers to call Plaintiff's cellular telephone 245 times. <u>SPUF</u>, ¶¶30-53.

D.  <u>RPM's Noble Predictive Dialer Is an ATDS Under the TCPA's Statutory Text</u>

Even assuming, arguendo,  the 2003 and 2008 FCC Orders are invalid post-<u>ACA Int'l</u> (which they are not), RPM's Noble Predictive Dialer is an ATDS under the TCPA statute. The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).  Litigants and courts have offered competing interpretations of § 227(a)(1). The dispute revolves around whether to be an ATDS a device must dial numbers generated by a random or sequential number generator, or if a device can be an ATDS if it

automatically dials numbers from a stored list. Here, the Noble Predictive Dialer used by RPM is an ATDS under both competing statutory interpretations of § 227(a)(1)(A).

First, in Marks v. Crunch San Diego, LLC, the Ninth Circuit determined the 2003 and 2008 Orders were no longer valid post-ACA Int'l. 904 F.3d 1041, 1049-50 (9th Cir. 2018) (attached as Exhibit O). Therefore, the Marks court looked to the TCPA's statutory text to determine the definition of an ATDS. After doing an extensive analysis of the TCPA's text and statutory scheme, the Marks court found "the statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." Id. at 1043. Marks essentially adopted the same statutory definition of an ATDS as the FCC's 2003 and 2008 FCC Orders: "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." Id. at 1052. Thus, a device with the capacity to store phone numbers and dial them automatically qualifies as an ATDS, even if it did not create or develop the numbers dialed on its own. Id. at 1052-53. Accord: Adams, 2018 U.S. Dist. LEXIS 184513, 2018 WL 6488062 (adopting same statutory definition of an ATDS as Marks; holding "the Court agrees with the reasoning and conclusions of post-ACA decisions which hold that 'the statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator.'"); Evans, 2018 U.S. Dist. LEXIS 221611, 2018 WL 6362637 (denying defendant's motion for reconsideration of order granting plaintiff's summary judgment finding telephone system is an ATDS; adopting same statutory definition of an ATDS as Marks).

The Court should adopt the same statutory definition of an ATDS as Marks, Adams, and Evans. Importantly, Marks is the only appellate case that has performed a detailed review and

18

analysis of the TCPA's text and statutory scheme. Moreover, given the remedial nature of the TCPA, the Court should follow Marks, Adams, and Evans and construe this issue liberally in favor of Plaintiff as the consumer. Atchison, 480 U.S. at 562; Parchman, 896 F.3d at 740-41.

Here, there is no genuine dispute of material fact the Noble Predictive Dialer used by RPM to call Plaintiff's cellular telephone 245 times falls within the statutory definition of an ATDS adopted by Marks, Adams, and Evans as the Noble Predictive Dialer automatically dials without human intervention from a stored, pre-programed list of telephone numbers. SPUF, ¶¶30-53.

Second, even if the Court finds, contra to Marks, Adams, and Evans, that the statutory definition of an ATDS requires the system to automatically dial numbers randomly or sequentially, the Noble Predictive Dialer still falls within the statutory definition of an ATDS. An illustrative case is Heard v. Nationstar Mortg. LLC, No. 2:16-cv-00694-MHH, 2018 U.S. Dist. LEXIS 143175, 2018 WL 4028116 (N.D. Ala. Aug. 22, 2018) (attached as Exhibit P). In Heard (a post-ACA Int'l decision), the defendant argued its telephone system was not an ATDS because it did not have "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." Id. at *15-16. In granting plaintiff summary judgment, the Heard court ruled defendant's telephone system was an ATDS under the TCPA's statutory definition because it automatically dialed numbers sequentially from a stored, pre-programmed list:

> "[D]efendant will always make its collection calls with reference to a relatively narrow, predetermined list of telephone numbers. But this fact does not prevent the TCPA from applying to Nationstar's predictive collection calls. Again, Nationstar's proposed interpretation of the TCPA is too restrictive. As discussed, Nationstar's system produces from the inputted call data a list of numbers that the iAssist software sequences according to a borrower's predicted availability to receive calls. iAssist then dials the numbers as sequenced and connects the call to a Nationstar representative only if someone answers the call that iAssist initiated. Yes, Nationstar's system is limited by the daily informational inputs of Nationstar employees, but the system orders sequentially the many numbers to call by

19

analyzing customer information and assigning times for Nationstar to contact particular numbers. . . . Again, the TCPA is a remedial statute, and the Court may not harness its remedial power by applying the statute narrowly." Id. at *16-18

Here, as in Heard, RPM's Noble Predictive Dialer satisfies the statutory definition of an ATDS. There is no genuine dispute of material fact that the Noble Predictive Dialer sequentially dials without human intervention from a stored, pre-programed list of telephone numbers based on pre-assigned times to call particular numbers. SPUF, ¶¶34, 36.

## VII.   RPM VIOLATED THE OHIO CSPA AS A MATTER OF LAW

RPM is a "supplier" under the Ohio CSPA and subject to its prohibitions. Gatto v. Frank Nero Auto Lease, Inc., 8th Dist. No. 74894, 1999 Ohio App. LEXIS 1571, 1999 WL 195664, at *8 ("A person retained to collect, or attempt to collect upon claims of debt arising from a consumer transaction is a 'supplier' as defined by Ohio Rev. Code § 1345.01(C)."); Schroyer v. Frankel, 197 F.3d 1170, 1177 (6th Cir. 1999) ("Ohio courts have read these provisions to hold that the collection of debts associated with consumer transactions . . . falls within the purview of the OCSPA because such debt collection covers acts that occur before, during, or after the transaction.") (citations omitted). RPM's TCPA violations also constitute "unfair, deceptive, or unconscionable" acts under the Ohio CSPA since they occurred in connection with the collection of a debt arising from a "consumer transaction." Ohio Rev. Code §§ 1345.02, 03; Charvat v. GVN Mich., Inc., 561 F.3d 623, 629 n.4 (6th Cir. 2009) ("In Ohio, the Consumer Sales Practices Act prohibits any 'unfair or deceptive act or practice in connection with a consumer transaction,' which includes violations of the TCPA[.] [Plaintiff] may collect for violations of both the TCPA and the CSPA."). Therefore, Plaintiff is entitled to $200.00 in statutory damages for each of RPM's 245 unlawful calls, and his reasonable attorney's fees. Id.; Ohio Rev. Code § 1345.09(B), (F).

20

<u>CERTIFICATE OF SERVICE</u>

I certify that a service copy of the foregoing Motion of Plaintiff for Partial Summary Judgment on Claims Against Defendant Receivables Performance Management, LLC was served on March 11, 2019 upon the following counsel of record via the Court's electronic filing system:

Sean Flynn, Esq.
Tyler Tarney, Esq.
Brant T Miller, Esq.
GORDON & REES LLP
20 S. Third Street Suite 210
Columbus, Ohio 43215
sflynn@gordonrees.com
ttarney@grsm.com
btmiller@gordonrees.com


Attorney for Defendants
Receivables Performance Management, LLC and
Howard George




/s/ *Adam V. Sadlowski*_____
Adam V. Sadlowski