**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

PHILLIP RAMSEY,

*Plaintiff*,

v.

RECEIVABLES PERFORMANCE MANAGEMENT, LLC, *et al.*,

*Defendants*.

Case No. 1:16-cv-1059

Judge Jeffery P. Hopkins

# OPINION AND ORDER

Defendants Receivables Performance Management, LLC ("RPM") and Howard George ("George") (collectively, "Defendants") used automated technology to call Plaintiff Phillip Ramsey's ("Plaintiff" or "Ramsey") cell phone two-hundred and forty-five (245) times without his consent. An annoyed Ramsey initiated this action on November 8, 2016. In his Amended Complaint, Ramsey asserts two claims against RPM and George: (1) violation of the Telephone Consumer Protection Act ("TCPA"), and (2) violation of the Ohio Consumer Sales Practices Act ("OCSPA"). Am. Compl., Doc. 18, ¶¶ 23–48.

Both parties filed motions for summary judgment in 2019. Docs. 80, 82. Ramsey moved for partial summary judgment, while Defendants moved for summary judgment on both claims. *Id.* Then-assigned District Judge Matthew W. McFarland denied summary judgment for Defendants and granted Ramsey partial summary judgment against RPM for TCPA violations in 2020. Doc. 120, PageID 2122. Judge McFarland awarded Ramsey $122,500.00 for those violations. *Id*. But not much later, the Supreme Court decided *Facebook,*

*Inc. v. Duguid*, 592 U.S. 395 (2021). Defendants are now before the Court for reconsideration asserting that the prior decision must be vacated in light of *Duguid*.

For the reasons below, Defendants' Motion for Reconsideration (Doc. 125) is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The thorough and comprehensive factual background that Judge McFarland established in his Memorandum Opinion and Order is not in dispute. Thus, rather than engage in a separate rendition of the facts, the Court will rely on the facts set forth therein:

> In 2014, Phillip Ramsey was appointed guardian over his father, who was suffering from a form of dementia. His father moved into a trailer that Ramsey kept on his property. That summer, Ramsey subscribed to Windstream Communications, LLC, for DISH satellite television, telephone, and internet services. Through that service, Ramsey's father purchased nearly 200 on-demand movies without Ramsey's knowledge or consent. The charges for the movies added up to $1,174.19. In August of that year, Windstream sent a collection letter to Ramsey stating that he owed Windstream for the on-demand movies and that it was going to send his account to collections if he did not pay. (Doc. 89-2 at ¶ 10.)
>
> Ramsey cancelled his Windstream service, but later requested reactivation of his services in late October 2014, resulting in a second Windstream account. (Doc. 89-2 at 14, Page ID 1781.) Windstream continued to make collection calls to Ramsey about the charges associated with the first account. During these calls, Ramsey repeatedly told Windstream to stop calling him. (*Id*. at ¶ 15.) On November 16, 2014, Ramsey sent a letter to Windstream requesting that Windstream and any affiliated collection agencies cease all communications with him. (*Id*. at ¶ 19; Doc. 80-3 at Page ID 1158, Ex. C-9.)
>
> Enter Defendant Receivables Performance Management (RPM). RPM is a debt collection agency in Washington State that specializes in collecting debt on behalf of creditors that work in telecommunications. (Doc. 89-2 at ¶ 25.) On February 19, 2015, Windstream placed Ramsey's second account with RPM for debt collection and, on March 30, 2015, did the same for the first account. (Doc. 87-1 at ¶ 4, Page ID 1670; Doc. 89-2 at ¶¶ 42, 44, Page ID 1793-94.) Windstream never communicated Ramsey's November 2014 cease-contact letter to RPM. (Doc. 87-1 at ¶ 5.) Over the next several months, RPM used a Noble Systems, Inc., telephone system — also known as the Noble Predictive Dialer — to call Ramsey's cell phone to attempt to collect the debt. (Doc. 89-2

at ¶¶ 53, 54.) Between February 20, 2015, and July 7, 2015, RPM used the Noble Predictive Dialer to call Ramsey's cell phone 245 times. (Doc. 87-1 at ¶ 11; 89-2 at ¶¶ 31, 43, 45, 53.)

As part of its operations, RPM used an internal electronic database called the PICK system. (Doc. 89-2 at ¶ 27.) The PICK system stored information on debtors' accounts, including telephone numbers, addresses, and debt information. (Doc. 89-2 at ¶ 28.) The PICK system and the Noble dialing system worked together. The Noble system had an automated function through which it generated and uploaded telephone numbers from the PICK system "each night automatically." (Doc. 70 at 18, Page ID 908.) According to Christopher Vittoz, RPM's Chief Financial Officer, "[t]he Pick system would each night go through and select accounts based on parameters that were entered into Pick for dialing the next day." (Doc. 76 at 91, Page ID 1044.) The accounts the PICK system selected "could be picked up into one of those list IDs, one of those campaigns," and then to the Noble dialing system and available for calling the next day. (*Id.*) A "campaign" was just a word for "a list of phone numbers" to be dialed. (Doc. 72 at 45-46, Page ID 947.) Thus, campaigns — that is, lists of phone numbers — would be built in the PICK system and then transferred to the Noble system. (Doc. 76 at 55.)

Calls went out to debtors in one of two ways: preview mode or list dialing. (Doc. 76 at 15-16.) To dial a number in preview mode, the number "would have had to be in both Pick and Noble for that agent to initiate that phone call." (Doc. 76 at 17.) In preview mode, an agent would "press a key to actually dial the phone number on that account." (Doc. 76 at 16-17.)

The other way was list dialing. (Doc. 76 at 15-16.) The Noble system was "primarily involved" in list dialing. (Doc. 76 at 14.) The RPM employee who ran the lists from day-to-day was Dan Parrott. Overnight, the telephone numbers would be moved from the PICK system to the Noble system. (*Id.* at 14.) The lists contained names, phone numbers, and other information. (Doc. 76 at 65.) List dialing was the alternative to preview mode: if calls weren't going out in preview mode, then "Dan [was] kicking off that list of numbers." (Doc. 76 at 16.) He would initiate the list-dialing "[e]ssentially [by] clicking a button to press play to have a list start." (*Id.* at 15.) When Parrot initiated the list to be dialed, "it was time to play that campaign." (*Id.*) At that point, "calls would go out from the dialer." (*Id.*)

When the Noble Predictive Dialer dialed a number, "the phone numbers would be called in the order that they appeared in the list . . . . [I]f that list connected with a person, somebody picked up the phone, then that would be connected over to an agent." (Doc. 76 at 67-68, Page ID 1038.) The Noble system connected consumers with agents by routing the call to the outbound collector floor, at which point the system would "hunt[] for an unoccupied outbound station. The call then drops into the collector's bin, he or she answers the call

> and the Pick system displays the account information for that debtor." (Doc. 70 at 72, Page ID 921.)
>
> No one suggests that the calls went out to Ramsey in any way other than through the Noble Predictive Dialer in list-dialing mode. RPM used preview mode for consumer accounts that were not marked as having prior express consent. (Doc. 76 at 17-18.) But in Ramsey's case, RPM had designated his account as having his prior express consent. (Doc. 89-2 at ¶ 39; Doc. 76 at 89, Page ID 1044.) And the parties agree on two more things: first, if a consumer's account with RPM was designated as having prior express consent to be called, then RPM used the Noble Predictive Dialer's "list dialing" function. (Doc. 89-2 at ¶ 38.) Second, RPM indeed used the Noble Predictive Dialer to call Ramsey a total of 245 times between February and July 2015.

Doc. 120, PageID 2102–05; *Ramsey v. Receivables Performance Mgmt., LLC*, 507 F. Supp. 3d 912, 914–16 (S.D. Ohio 2020) (McFarland, J.).

Against that backdrop, as noted, Ramsey advances two claims against RPM and George: (1) violation of the Telephone Consumer Protection Act ("TCPA"), and (2) violation of the Ohio Consumer Sales Practices Act ("OCSPA"). Am. Compl., Doc. 18, ¶¶ 23–48. Eventually, the parties filed cross-motions for summary judgment. Ramsey filed a Partial Motion for Summary Judgment seeking judgment on both of his claims against RPM. Doc. 80. Ramsey did not, however, seek summary judgment on his claims against George or whether Defendants willfully and knowingly violated the TCPA. *Id.* Defendants filed a Motion for Summary Judgment requesting judgment on both of Ramsey's claims. Doc. 82.

The ultimate issue in the case, as Judge McFarland explained, "depends on whether the Noble Predictive Dialer falls under the definition of an 'automatic telephone dialing system' (ATDS, or autodialer), as defined by 47 U.S.C. § 227(a)(1)." Doc. 120, PageID 2105; *Ramsey*, 507 F. Supp. 3d at 916. Judge McFarland determined that the Noble Predictive Dialer qualified as an ATDS. Doc. 120, PageID 2110–12; *Ramsey*, 507 F. Supp. 3d at 918–19. In reaching that conclusion, he relied on the Sixth Circuit's then-controlling decision in

*Allan v. Pennsylvania Higher Educ. Assistance Agency*, 968 F.3d 567 (6th Cir. 2020). The *Allan* court considered whether a specific system qualified as an ATDS and held that the phrase "using a random or sequential number generator" modifies the verb "[to] produce," but not "to store," thus rendering a stored-number device an ATDS. *Id.* at 580. Judge McFarland explained the effect of *Allan* on the parties dispute here:

> Accordingly, as it stands in the Sixth Circuit today [under *Allan*], an ATDS is "equipment which has the capacity [] to store [telephone numbers to be called]; or produce telephone numbers to be called, using a random or sequential number generator; and 01 to dial such numbers." [*Allan*, 968 F.3d at 579-80] (interpreting 47 U.S.C. § 227(a)(1)). This means that a stored-number device qualifies as an ATDS, whether or not it uses a random or sequential number generator. *Id*. at 580. Consequently, "devices that dial from a stored list of numbers are subject to the autodialer ban." *Id*. at 569.
>
> * * *
>
> [A]s it applies here, *Allan* requires this Court to resolve two questions: (1) Did the Noble Predictive Dialer store numbers? (2) Did it use an automated process to dial numbers?
>
> The short answers are yes and yes.
>
> * * *
>
> That makes it an ATDS.

Doc. 120, PageID 2108–11; *Ramsey*, 507 F. Supp. 3d at 917–19. Thus, Judge McFarland determined that Ramsey was entitled to summary judgment on RPM's TCPA violations and awarded him $122,500.00 in damages for those violations. He also determined that genuine issues of material fact precluded summary judgment on Ramsey's OCSPA claim and as to Howard George's involvement. Doc. 120, PageID 2120–22; *Ramsey*, 507 F. Supp. 3d at 924.

But soon after Judge McFarland issued his decision, the Supreme Court decided *Duguid*, which resolved a circuit split that implicated *Allan*. Following publication of *Duguid*, the parties filed a Notice (Doc. 121) advising this Court of the High Court's ruling. After

consultation with the parties, Judge McFarland advised that the parties may move for reconsideration to debate the effect of *Duguid* on the Court's opinion, and set a briefing schedule. Doc. 124. Defendants moved for reconsideration, and Ramsey opposed that motion. Docs. 125, 126. The matter became ripe upon the filing of Defendants' reply on July 19, 2021, *see* Doc. 127, and is now properly before this Court for review.[1]

## II. RECONSIDERATION

The threshold issue here is whether reconsideration is proper. "District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Reconsideration may be appropriate under this rule "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)).

Reconsideration is appropriate in this case. Judge McFarland expressly relied on *Allan* when he granted Ramsey partial summary judgment against RPM under the TCPA and denied summary judgment to Defendants. Doc. 120, PageID 2107–12; *Ramsey*, 507 F. Supp. 3d at 917–19. But after he did so, the Supreme Court in *Duguid* resolved "a conflict among the Courts of Appeals" on the issue of what is considered an "automatic telephone dialing system," or "autodialer," under the TCPA. *Duguid*, 592 U.S. at 401. Delivering the opinion of the Supreme Court, Justice Sotomayor explained that "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either

---

1 On December 21, 2022, this matter was reassigned to the newly appointed undersigned. The pending motion was one among several hundred other motions pending in civil cases reassigned to the undersigned. Doc. 128, PageID 2166.

store or produce phone numbers to be called." *Id.* at 409. Because of this decision, the Supreme Court expressly vacated and abrogated the Sixth Circuit's decision in *Allan*. Thus, Defendants are correct that there has been an intervening change in law that makes reconsideration appropriate in this case. Ramsey does not dispute this conclusion, but asserts that the result here remains unchanged under *Duguid*. This Court must therefore decide what *Duguid* means for Ramsey's claim under the TCPA.

## III. SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "'always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

The non-movant cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690,

697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is *material* if its resolution affects the outcome of an action, and a dispute is *genuine* if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At bottom, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).

Furthermore, as here, when parties file cross motions for summary judgment, "[e]ach party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law." *Fed. Energy Regul. Comm'n v. Coaltrain Energy, L.P.*, 501 F. Supp. 3d 503, 522 (S. D. Ohio 2020). "The fact that one party fails to satisfy that burden on his or her own Rule 56 motion does not automatically indicate that the opposing party or parties has satisfied the burden and should be granted summary judgment on the other motion." *Id.*

**B. Telephone Consumer Protection Act (Count 1)**

As stated, Ramsey has asserted a claim under the TCPA, which makes it unlawful to make certain calls "using any automatic telephone dialing system." 47 U.S.C. § 227(b)(1)(A). Resolving this claim on reconsideration of the parties' cross-motions for summary judgment requires us to ask the same question that Judge McFarland did in the first instance: does the Noble Predictive Dialer qualify as an automatic telephone dialing system? This time, however, we decide this question not under *Allan*, but under *Duguid*.

At summary judgment, Ramsey asserted that "[t]here is no genuine dispute of material fact that the Noble Predictive Dialer sequentially dials without human intervention from a stored, pre-programmed list of telephone numbers based on pre-assigned times to call

particular numbers." Doc. 80, PageID 1093. Ramsey maintains that position on reconsideration. Defendants, on the other hand, contend, as they did at summary judgment, that Ramsey has failed "to present any evidence that Defendants used a random or sequential number generator," while Defendants have "provided affirmative evidence that it did not have a random or sequential number generator." Doc. 125, PageID 2138.

In support of his position, Ramsey relies on a case that pre-dates *Duguid*: *Heard v. Nationstar Mortg. LLC*, No. 2:16-cv-694, 2018 WL 4028116 (N.D. Ala. Aug. 22, 2018). Ramsey says that *Heard* involved a telephone system that operates the same as the Noble Predictive Dialer, and reinforces his contention that the Noble Predictive Dialer qualifies as an ATDS. Doc. 126, PageID 2145. He also argues that, to the extent there is any reasonable ambiguity or uncertainty about the definition of "sequential number generator," such ambiguity should be resolved in his favor. *Id.* In *Heard*, the district court concluded that the telephone system at issue satisfied the TCPA's definition of an ATDS.

Contrary to Ramsey's argument, this Court is unconvinced that the ATDS predictive call analysis in *Heard* can be reconciled with *Duguid*, such that the Noble Predictive Dialer qualifies as an ATDS under *Duguid*. *See generally Pascal v. Concentra, Inc.*, No. 19-cv-02559, 2021 WL 5906055, at *10 (N.D. Cal. Dec. 14, 2021) (commenting that *Heard* was decided before *Duguid* and is likely no longer good law). The Supreme Court in *Duguid* held that the statutory phrase "using a random or sequential number generator" modifies both "store" and "produce." *Duguid*, 592 U.S. at 402. Thus, equipment does not qualify as an ATDS merely because it dials numbers from a preexisting number list automatically or according to algorithmic predictions. *Fluker v. Ally Fin., Inc.*, No. 24-1023, 2025 WL 1827747, at *2 (6th Cir. July 2, 2025) ("[E]quipment that merely stores and dials numbers from a pre-set list falls

outside the statute's scope because it doesn't use a random or sequential number generator."). Rather, the plaintiff must establish that the equipment has the capacity to use a random or sequential number generator to store or produce the telephone numbers to be called. *Duguid*, 592 U.S. at 409. *Heard* concluded that the system at issue in that case qualified as an ATDS because it "orders sequentially" numbers from a *preexisting* employee-supplied debtor list. *Heard*, 2018 WL 4028116, at *6. But this merely means that the system calls numbers from a *pre-set list* in a sequence; it does not mean that the system uses a *random or sequential number generator* to store or produce those numbers. *Duguid* demands the latter. *See, e.g.*, *Tehrani v. Joie de Vivre Hosp., LLC*, No. 19-cv-08168, 2021 WL 3886043, at *6–7 (N.D. Cal. Aug. 31, 2021) (collecting cases from district courts in various circuits that declined to apply *Duguid* to systems that randomly select numbers to call from a predetermined list of telephone numbers, when the telephone numbers were not originally generated or produced by the system itself). Further, beyond relying on *Heard*, Ramsey has offered no additional support that would create a genuine issue of material fact on this point, and Ramsey has likewise not persuasively countered the evidence provided by Defendants in a manner that demonstrates the Noble Predictive Dialer "use[s] a random or sequential number generator to either store or produce phone numbers to be called." *Duguid*, 592 U.S. at 409; *see also* Doc. 125, PageID 2138 n.4.

The factual predicate relied on by Judge McFarland supports this conclusion. That evidence establishes that RPM's PICK system maintained telephone numbers as part of identified debtors' account records; that PICK selected accounts for next-day calling based on entered dialing parameters; and that PICK compiled the selected accounts into "campaigns," *i.e.*, preexisting lists of telephone numbers, before transferring those lists to the Noble Predictive Dialer. Doc. 120, Page ID 2103–04; *Ramsey*, 507 F.3d at 915. Then, the system

dialed campaign numbers by "clicking a button to press play to have a list start." Doc. 120, Page ID 2103–04 (quoting Vittoz Dep., Doc. 76, 15:5–6); *Ramsey*, 507 F.3d at 915–16. Rather than establish that PICK or the Noble Predictive Dialer used a random or sequential number generator to store or produce the telephone numbers called, such that it would render the system an ATDS under *Duguid*, these facts merely demonstrate automated dialing from a targeted, pre-set list. *Fluker*, 2025 WL 1827747, at *2. Accordingly, the Noble Predictive Dialer is not an ATDS; thus, Defendants are entitled to summary judgment on Ramsey's TCPA claim. As a result, the prior decision granting summary judgment to Ramsey on this claim must be vacated.

**C. Ohio Consumer Sales Practices Act (Count 2)**

In addition to asserting a TCPA claim, Ramsey also asserted a claim under the OCSPA. The OCSPA provides a remedy for consumers seeking redress against unfair, deceptive, or unconscionable acts in connection with a consumer transaction. O.R.C. § 1345.02(A). Both parties sought summary judgment on this claim, and Judge McFarland determined that genuine issues of material fact precluded summary judgment for either party—although that decision appears to be closely tied to his assessment of the TCPA claim. Doc. 120, PageID 2120–22; *Ramsey*, 507 F.3d at 923–24. Based on *Duguid* and this Court's renewed analysis of Ramsey's TCPA claim, Judge McFarland's OCSPA determination is also subject to reconsideration.

At summary judgment, Defendants asserted that Ramsey's OCSPA claim depended on the success of his TCPA claim and that, even if it did not, the Court should decline to exercise supplemental jurisdiction over this claim. Doc. 82, PageID 1629–30. Defendants maintain the same on reconsideration. Doc. 125, PageID 2138. On the flip side, Ramsey

contended at summary judgment that Defendants' actions were violative of the OCSPA, independent of the TCPA, and that this Court should exercise supplemental jurisdiction over that claim even if his TCPA did not succeed. Doc. 80, PageID 1093; Doc. 87, PageID 1663–67. Ramsey reaffirms the same on reconsideration, but also asserts that this Court has diversity jurisdiction over this case, absent the TCPA claim. Doc. 126, PageID 2146–51.

So the parties dispute presents a threshold question: whether this Court retains subject-matter jurisdiction over Ramsey's remaining state-law claim? This Court has a duty to confirm whether subject-matter jurisdiction exists in each case before it. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for "[f]ederal question" jurisdiction, § 1332 for "[d]iversity of citizenship" jurisdiction. At the outset of this case, Ramsey properly invoked federal-question jurisdiction by alleging a colorable claim "arising under" the Telephone Consumer Protection Act, 47 U.S.C. § 227. *Bell v. Hood*, 327 U.S. 678, 681–85 (1946). The Court could therefore exercise supplemental jurisdiction over Ramsey's related claim under the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.02 and § 1345.03. *See* 28 U.S.C. § 1367.

Now that the Court has dismissed the TCPA claim, and thus all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over Ramsey's OCSPA claim. *Cabotage v. Ohio Hosp. for Psychiatry, LLC*, No. 2:11-cv-50, 2013 WL 1281940, at *7 (S.D. Ohio Mar. 26, 2013) (citations omitted). Defendants ask this Court to do exactly that. Ramsey, in turn, maintains that supplemental jurisdiction remains appropriate, but also asserts that the Court has diversity jurisdiction under 28 U.S.C. § 1332, irrespective of dismissal of the TCPA claim. Because diversity jurisdiction, if adequately

pleaded, would eliminate any need to address whether this Court should retain supplemental jurisdiction, the Court will grant Ramsey leave to amend his complaint under Rule 15 of the Federal Rules of Civil Procedure to allege the basis for diversity jurisdiction. The parties must also file a disclosure statement as required by Rule 7.1 of the Federal Rules of Civil Procedure and Local Rules of this Court.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion for Reconsideration (Doc. 125) is **GRANTED**. As a result of reconsideration based on the Supreme Court's intervening decision in *Duguid*, this Court **VACATES** the prior Memorandum Opinion and Order (Doc. 120), **DENIES** Ramsey's Partial Motion for Summary Judgment as to his TCPA claim (Doc. 80), and **GRANTS** Defendants' Motion for Summary Judgment as to that claim (Doc. 82). Accordingly, Defendants are entitled to judgment on Ramsey's TCPA claim; the Court reserves a decision on Ramsey's remaining OCSPA claim until the Court can resolve the jurisdiction issue. Ramsey is permitted leave to amend his complaint to allege the basis for diversity jurisdiction within twenty-one (21) days from the date of this Order.

**IT IS SO ORDERED.**

September 29, 2026

Jeffery P. Hopkins
United States District Judge